JAMES CRUIKSHANK, as Executor, etc., Appellant and Respondent, *v.* THE HOME FOR THE FRIENDLESS et al., Respondents; JULIA A. CHASE, Appellant.

The will of D., and a codicil thereto, gave his residuary estate to his executors in trust, to apply it, or the proceeds of sale, which they were empowered to make, to the establishment and endowment of a charitable institution, whose object and the class of persons to be relieved and benefited thereby should be the same as a charitable institution named.    The executors were authorized and directed to apply for and obtain from the state legislature, "as early as practicable," an act of incorporation of such an institution, and to do this, if possible, within ten years after his decease. In the event that the gift "should be adjudged or proved invalid or its execution be impossible, either by judicial decision or from any other cause," the testator directed that all his residuary estate should be sold and the proceeds equally divided among certain existing religious and charitable corporations named, all of whom had capacity to take.    In an action for the construction of the will, *held,* that the primary gift was invalid, as there was contemplated a period measured by years, not by lives, during which there would be no person in existence by whom an absolute estate in possession could be conveyed, and so there was an unlawful suspension of the power of alienation; also, that the gift was not saved by the fact that an institution, such as contemplated by the testator, could have been incorporated under the general law, as such a corporation was not intended or directed, but one formed under a special charter; also, that if the will should be construed as working an equitable conversion of the real estate into personalty this would not affect the question, because considering it as personalty, the prohibition of the statute against a suspension of the absolute ownership of personal property for more than two lives would apply.

*Shipman* v. *Rollins* (98 N. Y. 311); *Burrill* v. *Boardman* (43 id. 254) distinguished.

But, *held*, that the alternative and substituted gifts were valid; and that they took effect and the property vested in the beneficiaries named at the death of the testator.

By the codicil the testator gave to a sister, E., two lots of land. She died during his lifetime. *Held*, that the lapsed devise went into the residue.

The common-law rule that lapsed devises do not fall into the residue, but go to the heirs as undisposed of by the will, was done away with by the Revised Statutes (2 R. S. 57, § 5), and there is now no difference between lapsed devises and lapsed legacies, as it respects the operation upon them of a general residuary clause.

Also, *held*, that, as in the event which has happened, of the vesting of the residue in the corporations named, there was an imperative direction for the conversion of the real estate into money, and a gift of the proceeds, rents and profits went with the residue to the legatees.

(Argued March 22, 1889; decided April 16, 1889.)

CROSS-APPEALS from portions of judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made May 9, 1887, which affirmed a judgment, entered upon a decision of the court on trial at Special Term.

This action was brought to obtain a judicial construction of the will, and a codicil thereto, of John F. Delaplaine, deceased.

The testator died seized and possessed of a large amount of real and personal property, The will gave various devises and legacies, among them legacies to nine incorporated charitable institutions named. The residuary clause was as follows:

" *Eleventhly.* Whereas, I am unmarried and have no direct heirs to my estate other than my said two nieces, brother and sisters, for whom I entertain a sincere affection, but who possess ample wealth and whose happiness would not, in my opinion, be increased by their receiving more than I have already given to them, I, therefore, decide, to follow the impulses of my own heart, and to make such disposition of the remainder of my property as my sense of duty and desire of usefulness both urge and induce me. Accordingly, I hereby give, devise and bequeath to my executors hereinafter named, all the rest, residue and remainder of my estate, both real and personal, in trust, nevertheless to apply and dispose of the

same in the manner and for the purposes hereinafter expressed
and set forth.    I direct, authorize and require them to apply
and employ such estate, both real and personal, or the proceeds
arising from the sale of all or any part of the same (which I
hereby empower them to make at such time or times as they
shall deem expedient or advantageous) to the establishment,
support and endowment of a charitable institution to be located
in the city of New York, to be styled or named "The Dela-
plaine Institute for the Relief of the Friendless."    My desire
is, that the object of the same and the class of persons to be
relieved and benefited thereby should be similar to the object
and to the recipients of the charity of the institution in the city
of New York, now know as the Home for the Friendless, my
wish being to make it similarly useful.    I authorize and direct
my executors to apply for and obtain from the legislature of
the state of New York, as early as practicable, an act of incor-
poration of the same, and I also fully authorize and empower
them to make all such by-laws and ordinances relating to the
management and government of the same, and further to do
and perform all such acts and deeds as shall, in their judgment
and discretion, most promote and effect my benevolent and
charitable intentions.    It is, moreover, my will and desire that
in the event that this bequest and devise of my residuary
estate should be adjudged or prove invalid, or its execution
be impossible, either by judicial decision or from any other
cause, that then all the real and personal estate bequeathed
and devised thereunder shall be sold and the proceeds of such
sale shall be equally divided and paid over to the nine charita-
ble and religious institutions mentioned in the ninth and tenth
clauses of this my will, also the American Bible Society and
the American Missionary Association."

By the codicil the testator devised to a sister, who died
before the testator, two lots described.    It also contained this
clause :

" *Seventhly.* In order to obviate, as far as I may be able,
any chance or possibility that the devise to my executors in
trust of my residuary estate for the establishment and endow-

ment of an institute for the relief of the friendless be delayed or defeated by reason of any uncertainty or limitation therein expressed, or any legal defect therein, although it is my belief and intention to have effectually guarded against such event by my having invested my said executors with absolute power to do and perform all such acts and deeds as shall, in their judgment and discretion, most promote and effect my intention, I now further recommend and direct my executors to apply for and to obtain, if possible, the act of incorporation as in my will mentioned before the expiration of ten years after my decease, while I repeat my desire that they endeavor to obtain it as early as practicable; and I further hereby authorize and empower them if they or their counsel in the law shall deem it to be expedient or requisite to make an application to the Supreme Court of the state of New York for such order or orders in the matter, as shall enable them to perform and carry out my intentions by so amending the form or expression of such devise as far as may be necessary to prevent it from being inconsistent with any law or statute of said state, and in that case I hereby authorize them to perform and execute such order or orders, which, as far as necessary to secure and establish the validity of said devise, I hereby accept and assume as a modification and qualification of said devise as though the same were herein fully expressed."

Further facts are stated in the opinion.

*Michael H. Cardozo* for plaintiff, appellant. The cardinal rule for the guidance of courts in construing a will is to give effect to the intention of the testator, if such intention may, consistently with legal principles, be carried out. (*Inglis* v. *Trustees of Sailors' Snug Harbor,* 3 Pet. 99, 146; *Taggart* v. *Murray,* 53 N. Y. 233; *McCartee* v. *Orphan Asylum,* 9 Cow. 437, 442; *Vidal* v. *Girard,* 2 How. [U. S.] 127, 173.) Charitable bequests are to receive a much more favorable construction for upholding the gifts than any other species of trusts or provisions in wills. (2 Shelford, 518, 519; 2 Story's Eq. Jur. §§ 1165, 1174, and notes; Perry on Trusts, 629, 630;

*Sanderson* v. *White*, 18 Pick. 333; *Ould* v. *Washington Hospital*, 95 U. S. 303, 313; 3 R. S. [Banks' 7th ed.] 1702, 2288; *Attorney-General* v. *Downing*, Wilmot's Notes of Opinions and Judgments, 18.)    The gift by the testator of his residuary estate to his executors to be applied by them to the establishment, support and endowment of a " charitable institution to be located in the city of New York, to be styed or named ' The Delaplaine Institute for the Relief of the Friendless,' " is valid.    (*Robert* v. *Corning*, 89 N. Y. 225, 238; 23 Hun, 299; *Stewart* v. *Hamilton*, 37 id. 19; Laws 1849, chap. 244; 1 Jar. on Wills [5th ed.] 216; *Burrill* v. *Boardman*, 43 N. Y. 254, 260.)    Where a testator's intention cannot operate to its full extent it shall take effect as far as possible.    (2 Jar. on Wills [5th ed.] 709; Finch, 139; 4 Ves. 325.)    The short period of time that would have elapsed between the time of the death of the testator and the incorporation of this institution would have been by operation of law, and not through any defect in the will of the testator, and would not create any legal suspension.    (*Manice* v. *Manice*, 43 N. Y. 303, 365; *Shipman* v. *Rollins*, 98 id. 311, 328; *De Costa* v. *De Pao*, Ambler, 228.)    A trust of personalty is not within the statute of uses and trusts of this state, and may be created for any purpose not forbidden by law.    (*Gilman* v. *McArdle*, 99 N. Y. 451; *Jones* v. *Habersham*, 107 U. S. 174; *Russell* v. *Allerton*, id. 163; *Kain* v. *Gibboney*, 101 id. 362; *Ould* v. *Washington Hospital*, 95 id. 303; *Fountain* v. *Ravenel*, 17 How. [U. S.] 370; *Inglis* v. *Trustees of Sailors' Snug Harbor*, 3 Pet. 99; *Vidal* v. *Girard*, 2 How. [U. S.] 127; *Minot* v. *Baker*, 38 Alb. L. J. 152; *Colt* v. *Comstock*, 51 Conn. 352; *Sowers* v. *Cyrenius*, 39 Ohio St. 29; *Sanderson* v. *White*, 18 Pick. 328, 336; *Odell* v. *Odell*, 10 Allen, 1; *Attorney-General* v. *Downing*, 1 Dick. 414; Ambler, 560; *Attorney-General* v. *Bowyer*, 3 Ves. 714; 5 id. 300; 8 id. 256; *Chamberlayne* v. *Brockett*, L. R., 8 Ch. App. Cas. 206.)    The testator's gift of the residuary estate to his executors, to be divided by them among the charitable or benevolent institutions, is valid in the event of the

primary gift to charity being declared invalid. (*Wilkinson* v. *Adam*, 1 V. & B. 432, 466; *Fulham* v. *Wickett*, Willis, 303, 309; *Chapman* v. *Brown*, 3 Burr. 1626, 1634; *Rose* v. *Rose*, 4 Abb. Ct. App. Dec. 108 ; *Morgan* v. *Masterton*, 4 Sandf. 442, 449.) If the purposes of the will can only be efficiently carried out upon the theory of a conversion, the power to sell in the one case being absolute, and, in the other, being mandatory, the conversion exists. (*Hobson* v. *Hale*, 95 N. Y, 588; *Lent* v. *Howard*, 89 id. 169; *Powers* v. *Cassidy*, 79 id. 602; 64 How. Pr. 19; *Moncrief* v. *Ross*, 50 N. Y. 431; *White* v. *Howard*, 46 id. 144; *Phelps* v. *Pond*, 23 id. 69; *Stagg* v. *Jackson*, 1 id. 206, 212.) The power of sale operates as an immediate conversion of the real estate into personalty, and, as there is an absolute gift of the proceeds, the intermediate rents and profits go with and are to be deemed a part of the converted fund. (*Lent* v. *Howard*, 89 N. Y. 169, 176; *Moncrief* v. *Ross*, 50 id. 431; *Stagg* v. *Jackson*, 1 id. 206; *Phelps* v. *Pond*, 23 id. 69, 82; *Bective* v. *Hodgson*, 10 H. of L. Cas. 656, 665; *Saunders* v. *Vautier*, 4 Beav. 115; *Gibson* v. *Lord Montfort*, 1 Ves. Sr. 485; *Josselyn* v. *Josselyn*, 9 Sim. 63; *Genery* v. *Fitzgerald*, Jacob's Rep. 468.) The devise to the testator's sister, Emily Louisa Fuller, in the second clause of the codicil, lapsed, and became part of the residuary estate, and is to be disposed of under the provisions of the eleventh clause of said will. (*Earl* v. *Grim*, 1 Johns. Ch. 194; *Youngs* v. *Youngs*, 45 N. Y. 254, 257; *Floyd* v. *Barker*, 1 Paige, 480; *Gill* v. *Brouwer*, 37 N. Y. 549; *King* v. *Woodhull*, 3 Edw. Ch. 79; *Barnes* v. *Huson*, 60 Barb. 598; *Van Beuren* v. *Dash*, 30 N. Y. 393; *Hart* v. *Marks*, 4 Bradf. 161; *King* v. *Strong*, 9 Paige, 93; 2 Redf. on Wills [4th ed.] 115.) As these legacies are, by express terms, payable within one year, the legatees are entitled to interest, to be computed from the expiration of one year after the death of the testator. (3 R. S. [Banks' 7th ed.] 2300, 2301.)

*Lucien B. Chase* for Julia A. Chase, appellant. In construing this will the laws of New York state will govern.

(*Russell* v. *Allen*, 107 U. S. 166, 167.)    The will was void by reason of an undue suspension of the power of alienation. (*Everett* v. *Everett*, 29 N. Y. 39; *Schettler* v. *Smith*, 41 id. 328, 335; *Adams* v. *Perry*, 43 id. 487; *Garvey* v. *McDevitt*, 72 id. 556; *Hobson* v. *Hale*, 95 id. 588, 603; *Bascom* v. *Albertson*, 34 id. 584, 597; *Holland* v. *Alcock*, 108 id. 312; *Leonard* v. *Bell*, 1 T. & C. 608; *Yates* v. *Yates*, 9 Barb. 324; 34 N. Y. 620; *Rose* v. *Rose*, 4 Abb. Ct. App. 108; *Levy* v. *Levy*, 33 N. Y. 9; *Phelps* v. *Pond*, 23 id. 69.)    The New York courts have judicial power only, which, as to wills, goes not beyond their interpretation and establishment as interpreted.    (*Beekman* v. *Bonsor*, 23 N. Y. 298, 311; *Atty.-Genl.* v. *Church*, 36 id. 452, 457; *Bascom* v. *Albertson*, 34 id. 584, 594, 607; *Le Fevre* v. *Le Fevre*, 59 id. 434, 441.) As the intent, both by the word "then" and by the conditions precedent, fixes a time in the future for vesting, arbitrary, appreciable and unlimited by life, there will never be a vesting. (*Rose* v. *Rose*, 4 Abb. Ct. App. 108; *Bascom* v. *Albertson*, 34 N. Y. 584, 597, 598; *Smith* v. *Edwards*, 23 Hun, 223; affirmed, 88 N. Y. 98, 102.)    The charities failing, there is no conversion, since there is no object for it.    But if the institute is upheld, there is still no conversion, in that the power to sell is discretionary.    (*White* v. *Howard*, 46 N. Y. 144, 162; *Chamberlain* v. *Taylor*, 105 id. 185, 191; *Levy* v. *Levy*, 33 id. 97, 102; *Holland* v. *Alcock*, 108 id. 312.)    Until sale, in the circumstances supposed, there being a power simply (*Moncrief* v. *Ross*, 50 N. Y. 431; *Cooke* v. *Platt*, 98 id. 35), the rents and profits vest in the heirs-at-law.    (*Lent* v. *Howard*, 89 N. Y. 160.)    The devise in the codicil to the testator's sister showed an intent to cut down the residue, and upon the lapse of the legacy, through the death of the devisee in the lifetime of the testator, the lands went to the testator's heirs-at-law.    (*Van Buren* v. *Dash*, 30 N. Y. 393; *In re Benson*, 96 id. 499, 506; *Van Kleeck* v. *Church*, 20 Wend. 457, 475; 6 Paige, 600, 615; *Parker* v. *Bogardus*, 5 N. Y. 309; Reviser's Notes, 5 Edw. St. 624; *Lynes* v. *Townsend*, 33 N. Y. 558, 563; 2 R. S. 57, § 4; *Downing* v. *Marshall*,

23 N. Y. 366, 375; *Kip* v. *Van Cortlandt,* 7 Hill, 346, 354; *Trustees* v. *Roome,* 93 N. Y. 313, 330 : Bishop on Written Laws, §§ 82, 200; *People* v. *Potter,* 47 N. Y. 375, 379; *People* v. *Lacombe,* 99 id. 43, 49; *People* v. *Comrs. of Taxes,* 95 id. 554; *Burnside* v. *Whitney,* 21 id. 148; *Waring* v. *Waring,* 17 Barb. 552; *Thorne* v. *Cole,* 3 Edw. 330; *Betts* v. *Betts,* 4 Abb. N. C. 317, 418, 419, 429; *Mirehouse* v. *Scaife,* 2 M. C. 695, 706; *Cambridge* v. *Rous,* 8 Ves. 12, 25; *Blight* v. *Hartnoll,* L. R., 23 Ch. Div. 218; Maine's Ancient Law [2d Am. ed.] 174, 176, 182, 184; 7 Am. Law Rev. 56, 57; *Petit* v. *Smith,* 1 P. Wms. 7; *Farrington* v. *Knightly,* Id. 544, 548, 553; *Bennet* v. *Batchelor,* 1 Ves. Jr. 63; *Urquhart* v. *King,* 7 Ves. 228; *Mordaunt* v. *Hussey,* 4 id. 118; *Mence* v. *Mence,* 18 id. 351; *North* v. *Burdon,* 2 id. 496.)

*Joseph A. Welch* for T. W. Chambers, appellant. There is no ground for distinguishing between lapsed devises and lapsed legacies, upon the question whether they shall pass by a residuary limitation. (*Matter of Benson,* 96 N. Y. 499; 2 Blackstone, 378; 6 Cruise Dig. 6, 33; 1 Jarm. on Wills, 43; *Livingston* v. *Newkirk,* 3 J. Ch. 312; *Winchester* v. *Forster,* 3 Cush. 366, 369; *Prescott* v. *Prescott,* 7 Met. 141; *Hayden* v. *Houghton,* 5 Pick. 538; *Thayer* v. *Wellington,* 9 Allen, 283, 297; *Goodright* v. *Marquis of Downshire,* 2 B. & P. 600; *Brimmer* v. *Sohier,* 1 Cush. 132; *In re Bachelder,* 18 N. E. Rep. 225; *Smith* v. *Curtis,* 5 Dutcher, 345; *Turpin* v. *Turpin,* 1 Wash. 75; *Hyer* v. *Shobe,* 2 Munf. 200; *Culsha* v. *Cheese,* 7 Hare, 236; *Green* v. *Dunn,* 20 Beavan, 6; *Brown* v. *Higgs,* 4 Ves. 708.) All the real property of a testator devisable by him at the time of his death, and not then otherwise disposable under the will, falls within the force of the general residuary clause. (4 Kent's Com. 542; 20 Wend. 499; *Pond* v. *Bergh,* 10 Paige, 140, 149; *McNaughton* v. *McNaughton,* 41 Barb. 52; *Van Cortlandt* v. *Kip,* 1 Hill, 590; *Ellison* v. *Miller,* 11 Barb. 334; *Brown* v. *Brown,* 16 id. 569–574; *Hillis* v. *Hillis,* 16 Hun, 76; *In re L' Hommedieu,* 32 id. 10; *Youngs* v. *Youngs,* 45 N. Y. 258, 259;

*Floyd* v. *Carow*, 88 id. 568.)   The testator, in the lim-
itation of his estate to the executors for the benefit of the
eleven charitable corporations, if not in that for the establish-
ment of the Delaplaine Institute, has, by blending the proceeds
of the real estate with the personalty, stamped the entire
residuary estate with the quality of personalty, in such a manner
as to constitute the gift of the entire residuum a legacy, and the
executors legatees thereof.   (*Durour* v. *Motteux*, 1 Ves. Sr.
320; *Green* v. *Jackson*, 5 Russ. 35; *Salt* v. *Chattaway*,
3 Beav. 576; *Bernard* v. *Mishull*, Johns. [Eng. Ch.] 276,
298; *Hutcheson* v. *Hammond*, 3 B. C. C. 148.)   Any uncer-
tainty that might be considered to exist under the light of a
general residuary devise, has been obviated by the testator,
by the employment of the most ample expressions of an
intention to give all his estate, not otherwise disposable at his
death by the will, to his executors for the accomplishment of
his benevolent purposes.   (*Smith* v. *Coffin*, 2 H. Bl. 444;
*Grayson* v. *Atkinson*, 1 Wilson, 333; *Beachcroft* v. *Beach-
croft*, 2 Vern. 690; *Doe* v. *Gilbert*, 6 B. Mon. 268; 3 Brod.
& B. 85; *Wilce* v. *Wilce*, 5 M. & P. 682; *Hogan* v. *Jackson*,
Cowper, 299; *Doe* v. *Hurrell*, 5 B. & Ald. 21; *King* v
*Denison*, 1 Ves. & B. 260.)   As to the real property, pend-
ing the incorporation of the institute, the power of sale con-
nected with the provisions of the will prevents the invalidity
of perpetuity.   (*Robert* v. *Corning*, 89 N. Y. 236–239; *Hob-
son* v. *Lent*, 95 id. 603–609; *Wetmore* v. *Parker*, 52 id. 460;
*Garvey* v. *McDevitt*, 72 id. 556; *Burrill* v. *Boardman*,
43 id. 254, 258–260.)   Supposing a conversion of the real
estate to have been effected by the executors having exercised
the power, then all the estate being personal, part originally
such, and part such by the conversion, the rules relating to
personal estate apply to the whole residuary estate.   (*Gilman*
v. *McArdle*, 99 N. Y. 451.)   The procurement of a charter
was a mere preliminary measure.   (*Manice* v. *Manice*, 43
N. Y. 304; *Robert* v. *Corning*, 89 id. 238.)   If the court
shall adjudge that the residuum, or either portion thereof,

fails to pass to the "Delaplaine Institute," then the secondary limitation, in favor of the eleven societies therein named, will take effect. (*McLean* v. *Freeman*, 70 N. Y. 81; *Schettler* v. *Smith*, 41 id. 328.) If the residuary estate is adjudged to belong to the eleven secondary legatees, then the power of sale, connected with this limitation, being imperative, operates as a conversion of the realty into personalty, as of the time of the testator's death, and the entire residuum passes as personalty. (*Lent* v. *Howard*, 89 N. Y. 169; *Chamberlain* v. *Taylor*, 105 id. 185.) If the residuary estate is adjudged to belong to the secondary legatees, then by reason of the conversion wrought by the clause bestowing it upon them, the rents accruing since the testator's death go to the executors for the benefit of those legatees. (*Stagg* v. *Jackson*, 1 N. Y. 206; *White* v. *Howard*, 46 id. 162; *Lent* v. *Howard*, 89 id. 169; *Chamberlain* v. *Taylor*, 105 id. 185.)

*C. E. Tracy* for the American Bible Society, respondent. The provisions of the will for the Delaplaine Institute are invalid. (*Prichard* v. *Thompson*, 95 N. Y. 76; *Will of O'Hara*, Id. 403; *Holland* v. *Allcock*, 108 id. 312.) Nor does the codicil help the matter out, for it fixes an absolute period of ten years, in place of a life or lives in being, within which the corporation is to be created. This is in itself also invalid. (*Burrill* v. *Boardman*, 43 N. Y. 254; *Shipman* v. *Rollins*, 98 id. 328.)

*David McClure* for the Roman Catholic Orphan Asylum, respondent. The testator having, at the time of his decease, his domicile, and all the real estate covered by the will, being in the state of New York, the will is to be construed according to the laws of this state. (Story on Confl. of Laws, §§ 431, 464–474; 1 Jarman on Wills, 1–3; *Dupuy* v. *Wurtz*, 53 N. Y. 560; *Bascom* v. *Albertson*, 34 id. 584.) The provisions for the incorporation of a charitable institution to carry out the testator's views, and for a transfer to it of testator's residuary estate are void. (1 R. S. 723, § 15; Id. 773, § 1; *Schettler* v.

*Smith,* 41 N. Y. 328; *Bascom* v. *Albertson,* 34 id. 584; *Leonard* v. *Bell,* 1 Sup. Ct. [T. & C.] 608; *Levy* v. *Levy,* 33 N. Y. 97; *Matter of Russell,* 5 Dem. 388.; *Everitt* v. *Everitt,* 29 N. Y. 39; *Tucker* v. *Tucker,* 5 id. 408; *Amory* v. *Lord,* 9 id. 403; *Moore* v. *Lord,* 47 Barb. 257; *Beekman* v. *Bonsor,* 23 N. Y. 298.) The provision directing division in case of invalidity of devise as to institute is valid. (*Rice* v. *Barrett,* 102 N. Y. 161; *Fowler* v. *Depau,* 26 Barb. 224; *Schettler* v. *Smith,* 41 N. Y. 328; 2 Redf. on Wills, 217.) The word "then," as used in the will, is a proper if not a necessary word for joining the two parts of this sentence, and is, therefore, a conjunction with but one meaning, in substance, viz., "in consequence of" or "in that case." It is synonymous with the phrase "in the event" previously used. (Stormonth's Dict. word "then;" Worcester's Dict. word "then.") The charitable institutions are entitled to all accretions since death of testator. (3 Redf. on Wills, 139; *Lent* v. *Howard,* 89 N. Y. 169; *Moncrief* v. *Ross,* 50 id. 431.) Interest is payable upon the bequest of $1,000 to each of certain charitable institutions made by the ninth clause, beginning one year after testator's death. (Redf. Law of Sur. Cts. 600, 601.)

*Austin Abbott* for American Home Missionary Society et al., respondents. The trust sought to be created by the eleventh clause of the will and the seventh clause of the codicil is invalid. (*Holmes* v. *Mead,* 52 N. Y. 337, 338; *Bascom* v. *Albertson,* 34 id. 584; *Yates* v. *Yates,* 9 Barb. 324; *King* v. *Rundle,* 15 id. 139; *Voorhees.* v. *Presbyterian Ch.,* 17 id. 103; *Beekman* v. *People,* 27 id. 260; *McCaughal* v. *Ryan.* Id. 376.) Assuming that there is no equitable conversion, and that the trust deals with real estate as such, it is void as, within the statutes, in relation to perpetuities, as the real estate embraced by the trust is not to vest at the testator's death, or within a period thereafter measured by human life. (1 R. S. 723, §§ 14, 15; *Leonard* v. *Bell,* 1 Sup. Ct. [T. & C.] 608; *Hawley* v. *James,* 16 Wend. 61, 63; *Boynton* v. *Hoyt,* 1 Denio, 53; *Amory* v. *Lord,* 9 N. Y. 403; *Beekman* v. *Bon-*

*sor*, 23 id. 298 ; *Schettler* v. *Smith*, 41 id. 328 ; *Knox* v. *Jones*, 47 id. 389, 397 ; *Bascom* v. *Albertson*, 34 id. 584 ; *Yates* v. *Yates*, 9 Barb. 324 ; *Phelps* v. *Pond*, 23 N. Y. 69 ; *Morgan* v. *Masterton*, 4 Sandf. 442 ; *Ker* v. *Dungannon*, 1 D. & W. 509 ; Lew. on Perpet. 147, 170–172 ; *Leonard* v. *Burr*, 18 N. Y. 96 ; *Levy* v. *Levy*, 33 id. 97 ; *Phelps* v. *Phelps*, 28 Barb. 121 ; *White* v. *Howard*, 46 N. Y. 144 ; *Sherwood* v. *Am. B. Soc.*, 4 Abb. Ct. App. Dec. 227 ; *Rose* v. *Rose*, Id. 108.) If the provisions of the will work an equitable conversion, and the estate is to be regarded as personal estate in the hands of the executors and trustees, the trust is equally void. (1 R. S. 773, § 1 ; 3 id. [7th ed.] 2256 ; *Adams* v. *Perry*, 43 N. Y. 487, 490, 491 ; *Schettler* v. *Smith*, 41 id. 328, 334 ; *Knox* v. *Jones*, 47 id. 389, 397.) This trust also works an unlawful accumulation of rents and profits of real estate, if there is no equitable conversion. (1 R. S. 726, § 37, 773, § 3 ; 3 id. [7th ed.] 2178, § 3, 2257, § 3 ; *Cook* v. *Lowry*, 29 Hun, 20, 24 ; 95 N. Y. 103 ; *Barbour* v. *De Forest*, Id. 13 ; *Pray* v. *Hegeman*, 92 id. 508.) The trust seeking to found the " Delaplaine Institute for the Relief of the Friendless " being void, the substituted gift to the various religious and charitable societies is valid and takes effect. (*Jackson* v. *Phillips*, 14 Allen, 539 ; *Brattle Sq. Ch.* v. *Grant*, 3 Gray, 142 ; *Odell* v. *Odell*, 10 Allen, 5, 7 ; *Armstrong* v. *Armstrong*, 14 B. Mon. 333 ; *Morgan* v *Masterton*, 4 Sandf. 442 ; *Du Bois* v. *Ray*, 35 N. Y. 162 ; *Harrison* v. *Harrison*, 36 id. 543 ; *Bean* v. *Bowen*, 47 How. Pr. 306 ; *Doubleday* v. *Newton*, 27 Barb. 431 ; *Dupre* v. *Thompson*, 8 id. 537 ; *Hull* v. *Hull*, 24 N. Y. 647 ; *King* v. *Whaley*, 59 Barb. 71 ; *Barnum* v. *Barnum*, 26 Md. 119 ; *Gilman* v. *Reddington*, 24 N. Y. 9 ; *Bulkley* v. *De Peyster*, 26 Wend. 21 ; *Meserole* v. *Meserole*, 1 Hun, 66 ; *Eells* v. *Lynch*, 8 Bosw. 465 ; *Manice* v. *Manice*, 43 N. Y. 303, 363 ; , *Blanchard* v. *Blanchard*, 4 Hun, 287 ; 70 N. Y. 615.) The word " then " accompanying the condition of the gift to the societies does not indicate a lapse of time during which the gift shall not vest and thus suspend the ownership. It is equivalent to the words " in that event." (*Barker* v. *Southerland*, 6 Dem. 220, 223 ; *Hennessy* v. *Pat-*

*terson*, 85 N. Y. 91, 101; *Bedell* v. *Guyon*, 12 Hun, 396; *Matter of Mahan*, 98 N. Y. 372, 377.) The language of the will works an equitable conversion of real property into personalty in the event the trust first sought to be created is void. (*Kane* v. *Gott*, 24 Wend. 641; *Stagg* v. *Jackson*, 1 N. Y. 206, 212; *Bramhall* v. *Ferris*, 14 id. 41; *Phelps' Exrs.* v. *Pond*, 23 id. 69; *Chamberlain* v. *Chamberlain*, 43 id. 432; *Hatch* v. *Bassett*, 52 id. 359; *Lent* v. *Howard*, 89 id. 169.) The rents of the real estate and the income of the personal property forming the residuary estate belong to the societies from the time of testator's death. (*Lent* v. *Howard*, 89 N. Y. 169.) The legacies of $1,000 each, given by the ninth and tenth clauses of the will, bear interest at the rate of six per cent per annum from one year after testator's death. (2 R. S. 90, § 43; *Dustan* v. *Carter*, 3 Dem. 149; *Carr* v. *Bennett*, id. 433.) The real estate devised to testator's sister, Emily Louisa Fuller, by the second clause of the codicil, falls into the residuary estate, the said Emily Louisa Fuller having died before the testator. (*Van Kleeck* v. *R. D. Church*, 6 Paige, 600; 20 Wend. 457; *Hollis* v. *Hollis*, 16 Hun, 78; *Thayer* v. *Wellington*, 9 Allen, 283, 295; *Van Beuren* v. *Dash*, 30 N. Y. 393.)

FINCH, J. The testator devoted the bulk of his estate to charity. He carefully explained in his will that he left neither wife nor children; that his brother and sisters and nieces were already in comfortable, if not affluent, circumstances; and so he felt at liberty, after some moderate gifts to them, to follow "the impulses of his own heart" and his "sense of duty" by devoting the rest of his property to the rescue and help of the unfortunate. Two of his nieces, Mrs. Schieffelin and Mrs. Beekman, accepted the disposition which he made, but his sister, Mrs. Chase, in her own right and as administratrix of the deceased brother, seriously disapproves, and is now here upon appeal seeking to wrest the property from the uses of charity, and, to that end, invoking the aid of established rules of law to destroy the trust created by the

will, and break through its fences into the fortune which the testator, at least, intended to withhold.

His primary purpose was to found and endow an institution to be denominated the Delaplaine Home for the Friendless. It was to be situated in the city of New York. Its object, as it existed in his mind, was indicated only by its name, and his reference to a similar institution already incorporated and doing its charitable work. He says: " My desire is that the object of the same and the class of persons to be relieved and benefited thereby should be similar to the object and to the recipients of the charity of the institution in the city of New York, now known as the Home for the Friendless, my wish being to make it similarly useful." To accomplish his purpose he directs his executors to apply for and obtain from the legislature, as early as practicable, an act of incorporation; and in a codicil to the will recommends and directs that it be obtained before the expiration of ten years from his decease, but repeats the injunction that it be obtained as soon as possible. There seems to have been in his mind some lurking doubt of the validity of his trust, and some fear that collaterals might covet his wealth, and so he provides an alternative or substituted devise and bequest of the same residue to a number of existing charitable corporations, which he names, " in the event," as he phrases it, " that this bequest and devise of my residuary estate should be adjudged or prove invalid, or its execution be impossible, either by judicial decision or from any other cause." The courts below have held that the gift to the corporation to be created is invalid, because it suspends the absolute power of alienation beyond the statutory limit, and from that determination the executors have appealed. Those courts also decided that the substituted bequest to the charitable societies named was valid, and from that decision Mrs. Chase appeals. Two questions are, therefore, presented for our consideration.

*First.* Can the gift to the unincorporated and non-existing institution be sustained? It is quite apparent that the testator expected and the will contemplated a delay before vesting in

the intended beneficiary long enough to enable it to come into being through the consent of the sovereign, and which by possibility might extend to a period of ten years.   Such incorporation was dependent upon the will of the legislature.   Its consent could reasonably be anticipated, but was not at all certain. Eleven existing corporations, more or less useful and influential, were to take the property if a charter should be withheld, and under their possible pressure and argument the legislature might think that the interest of the state would be better subserved by the strengthening of existing institutions which had passed beyond the stage of experiment than by the creation of a new one, more especially when a Home for the Friendless already existed.   It might be argued that under the will a choice of alternatives was fairly left to the state, which it might make by granting or refusing a charter to the proposed institution.   The delay contemplated was not incidental merely to a result certain and possible, as in *Robert* v. *Corning* (89 N. Y. 225) where it was the time reasonably needed for a conversion in the ordinary manner, but contingent upon the uncertain action of the state, which might not take place at all, and leave a period of ten years during which the power of alienation would be suspended.   It is not material to consider where the fee would lodge in the interim, whether in the executors, by force of an express or implied trust, or in the heirs by descent, subject to be divested by the happening of the contingency.   In either case there was contemplated a period measured by years and not by lives in being during which there would be no persons in existence by whom an absolute estate in possession could be conveyed.   The authorities fully and clearly determine the invalidity of such a limitation.   In *Bascom* v. *Albertson* (34 N. Y. 584) the gift was to such persons in Vermont as might be appointed by the Supreme Court of that state as trustees of an institution to be located at Middlebury for the education of females.   Beyond a criticism upon the uncertainty of the object, the court held that the bequest was void because it was contingent and executory and involved an illegal suspension of the ownership of

the fund. To a similar effect are *Leonard* v. *Burr* (18 N. Y. 107) in which the gift was to the village of Gloversville, when it should be incorporated, for a public library; *Dodge* v. *Pond* (23 id. 69), where the bequest was for a college to be founded in Liberia; *Beekman* v. *Bonsor* (23 id. 306), in which an effort was made to found a dispensary; and *Rose* v. *Rose* (4 Abb. Court of Appeals Dec. 108). One vice in all these cases was that by force of the limitations created the ownership was left "swinging in abeyance," doubtful of its direction and ultimate resting-place, and this for a period longer or shorter, and not measured by lives in being. Where that limit of suspension *was* provided the trust escaped condemnation; as in *Shipman* v. *Rollins* (98 N. Y. 311), where the gift was to vest or fail at the end of the one life of the widow; and in *Burrill* v. *Boardman* (43 id. 254) where a hospital was to be incorporated, but within the two lives of a nephew named and the youngest of the executors.

It does not save the gift that in the present case a Home for the Friendless could have been incorporated under the general law, for such a corporation the testator did not intend or direct, but specifically required that his donee should be a corporation formed under a special charter. The restrictions in the general law made it inappropriate to the testator's design, but, whether so or not, we cannot substitute for his explicit direction something other and different, and outside of his expressed purpose. Nor does it help the situation to say that there was an equitable conversion resulting from the power of sale which, though discretionary, was claimed to be essential to the scope and plan of the will; and that the property treated as personal was not within the statute regulating trusts, as was held in *Gilman* v. *McArdle* (99 N. Y. 451). That doctrine does not reach or affect the prohibition of the statute against a suspension of the absolute ownership of personal property for more than two lives; and a power of sale does not avoid the statute when the resultant proceeds wear the same fetters as restrained the alienation of the land. In

*Bascom* v. *Albertson* (*supra*), the whole residue covered by the bequest was of personal assets in this state; and if, in the present case, the land be deemed money, the fundamental difficulty is not removed. I can discover no permissible escape from the conclusion that the primary devise for a new Home for the Friendless was invalid.

*Second.* The next question respects the consequences of that conclusion. One would suppose, as the courts below have decided, that the alternative and substituted devises and bequests to the eleven charitable corporations would vest at the death of the testator; but in behalf of Mrs. Chase it is argued that a suspension was contemplated until the final judgment of the court declaring the invalidity of the primary devise. I think we may make short work of that proposition. The judgment of the court does not make or create the invalidity; it declares its existence at the date of the testator's death, and *eo instanti* the alternative devises took effect. The testator's reference to a judicial decision is accompanied by the expression as to his primary devise "if it shall *prove* invalid;" that is, if it shall turn out invalid, or shall be ineffective. His use of the word "then" is in the sense of in that event, and his obvious meaning, which no refinement of criticism can obscure, is that if his devise to the non-existent corporation be void the alternative gifts shall vest. They so vested at his death. Our judgment merely ascertains that fact and settles it, but it existed before our decree, and at the instant of the testator's decease. No question is here raised as to the capacity of the eleven corporations to take.

*Third.* But a third question, of a minor character as to the amount involved, is presented for our determination. By the codicil to his will the testator gave to his sister, Emily L. Fuller, two lots of land to be held by her in fee simple. She died in testator's lifetime, and the old rule that while lapsed bequests fall into the residue, lapsed devises do not, but go to the heir as undisposed of by the will, is invoked to carry the land to the heirs and take it from the charities. I think that

rule must be regarded as changed, and that there is now no reason for difference and so no difference between lapsed legacies and lapsed devises as it respects the operation upon them of a general residuary clause. Among the numerous reasons which have been assigned for the common-law rule, some of which were always artificial and unsatisfactory, the principal and most sensible one is well stated by LEARNED, J., in *Hillis* v. *Hillis* (16 Hun, 76), and by GROVER, J., in *Youngs* v. *Youngs* (45 N. Y. 254). That reason was that the right to dispose of land by will, when regained after its loss, came in the form of a right to dispose of uses, and, since the appointment of uses was a present act, the power to devise was held to apply at the date of the will or of the disposing act, and so the residuary clause would cover neither lapsed devises nor after-acquired lands. This reason wholly disappeared when our statute made the will speak from the testator's death both as to real and personal property. It provides that where a testator, in express terms, devises all his real property or indicates his intent to dispose of it all, the will shall be construed to pass all which he was entitled to devise at the time of his death. (2 R. S. 57, § 5.) As I read the case of *Youngs* v. *Youngs*, the lapsed devise was carried to the residue upon two grounds; one, that the rule as to lapsed devises had become the same as to lapsed legacies, and, the other, that a contingent remainder framed by the will was wholly undisposed of unless covered by the devise of the residue. The same opinion as to a change in the rule is expressed in *Hillis* v. *Hillis*, though it was deemed not essential to the result finally reached. The subject came under discussion in the courts of Massachusetts after an enactment similar to our own, and resulted in a conclusion which put lapsed devises upon a footing identical with lapsed legacies. (*Thayer* v. *Wellington*, 9 Allen, 283.) I think that must be regarded as the correct rule applicable to a general residuary clause which is not narrowed or restricted by the terms of its own construction. The testator in the present case clearly expressed his intention to pass all his property, and that

nothing additional should pass to his heirs beyond what he had effectually given them. He explains his reasons for that; speaks of an intended disposition of " the remainder " of his property; and then formally devises and bequeaths to his executors all the rest, residue and remainder of his estate, both real and personal, in trust. I think we should hold that the lapsed devise fell into the residue. Since, in the event which has happened of the vesting of the residue in the eleven charitable societies, there was an imperative direction for the conversion of the real estate into money and a gift of the proceeds, it follows that the rents and profits go with the residue to the ultimate legatees. (*Lent* v. *Howard*, 89 N. Y. 169.)

The judgment should be affirmed, with costs to all parties payable out of the estate.

All concur.

Judgment affirmed.