THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* ALFRED L. SIMONSON et al., Executors, etc., Respondents.

*It seems* an action is not maintainable by the attorney-general in the name of the people against executors or trustees for waste, misapplication of the estate or any malversation in office.

When, by the terms of a testamentary gift in trust of property, its ownership must be necessarily uncertain for a period of time not measured by lives, the statute against perpetuities intervenes and condemns it.

As to whether a gift may be sustained where the delay is merely incidental and caused by the formalities and details of incorporation of the body to take, and its creation is possible and certain to be effected under a general law in accordance with the testator's directions, *quære.*

*It seems* that the non-existence as a corporate body, at the time of a testator's death, of an institution intended by him as an object of his bounty, will not alone defeat a testamentary gift, and an executory bequest to the use of an institution directed to be incorporated within the period allowed for the vesting of future estates, may be upheld as valid.

Where, however, no such limit is fixed to the time of incorporation, but it is left dependent upon the will of the legislature, the gift is void.

W., by his will, gave his residuary estate to his executors, in trust, to create and endow a benevolent institution, and he directed them, upon his decease, to apply to the legislature for an act incorporating it. The will defined the purposes and object for which said institution should be created and intrusted with the property which the executors were directed to convey to it upon its incorporation; the executors were appointed its "sole and permanent trustees," and it was provided that "they be inserted in any act of incorporation as such trustees," and that they should fill vacancies occurring in their body "so long as such institute shall exist as a corporate body, or otherwise." By a codicil W. directed "that the devise and bequest  *  *  *  with regard to the founding" of such institute "be changed and the provisions thus made therefor be applied to the founding of a musical institution;" he directed "that appropriate legislation and means be adopted to perfect the incorporation and general plan of the institution as near or similar to the

plan or method given" in the will with regard to the formation of the benevolent institute. In an action instituted by the attorney-general, among other things, to establish a testamentary trust for public charitable purposes under said will, *held,* that the only effect of the codicil was to change the name of the beneficiary mentioned in the residuary clause of the will and to apply to it the same provisions as to incorporation, and plan of corporate management; and that the provisions of the will and codicil were void, as they contravened the statutes, limiting the power of alienation.

It was claimed that the institution provided for by the codicil could be incorporated under the general act of 1875 (Chap. 176, Laws of 1875), passed before the codicil was executed; this requires that the corporation to be created must have not less than seven trustees. The will appointed three executors; the number was increased by the codicil to four. *Held,* that the restrictions of said act make it inappropriate to the testator's design; that even in case said act might be modified by the legislature so as to permit of the incorporation desired by the testator, a delay would ensue dependent upon the will of the legislature, not upon lives, and so the objection was not obviated.

(Argued February 24, 1891; decided April 28, 1891.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 10, 1889, which affirmed a judgment in favor of defendants, entered upon a decision of the court on trial at Special Term dismissing the complaint.

This action was brought by the attorney-general in the name of the people against defendants who were executors and trustees under the will of Samuel Wood, deceased.

The complaint alleged in substance the execution by said Wood of a will and codicil thereto, which were admitted to probate, and that letters were issued to the executors named; that subsequently a collusive action was commenced by one of the executors named in both the will and codicil, and the only surviving one of four named in the codicil, two of them having died and a fourth having refused to qualify, against Edward T. Schenck, an executor named in the will, but superceded by the codicil, to have the codicil declared invalid. The answer in said action admitted the allegations of the complaint, and upon the report of a referee before whom no contest was made,

a judgment was rendered declaring said codicil to be void; that said Schenck had succeeded in delaying the recording of said will and codicil, and on presentation to the surrogate of the will and the collusive judgment, he procured said will to be recorded without the codicil and letters testamentary to be issued to the two executors, parties to said action, and that the codicil has been lost or destroyed. The complaint then alleged waste, mismanagement and misappropriation of the property of the estate by said executor; that none of the charitable trusts provided for by the will and codicil have been carried out, and that they are endeavoring to appropriate the estate.

The relief asked was that the court: (1) Establish the said codicil as a lost or destroyed will and direct the same to be recorded by the surrogate of New York county. (2) Declare, establish, preserve and enforce the charitable trusts created by said testator and vacate and adjudge void the aforesaid records of this court purporting to be a judgment setting aside said codicil and a judgment invalidating said charitable devises. (3) Ascertain whether there is in existence any corporation entitled to receive the residuary estate of said testator, and if not, provide for the creation of such corporation. (4) Remove said defendants from office as testamentary trustees and appoint new trustees to execute the duties thereof. (5) Take in charge the trust property and administer the same by its officer or officers and appoint a receiver thereof pending this action. (6) Declare fraudulent, illegal and void the aforesaid conveyances of the testator's property to the defendants, and direct the record thereof to be canceled. (7) Require the defendants and each of them to account for and pay over and transfer to the officers appointed by the court, all moneys, property and values of every kind which they have illegally acquired or converted to their own use, and all moneys with which they are chargeable or which they have lost or wasted. (8) Enjoin said defendants from acting in any way as testamentary trustees under said will and from disposing of or in any way collecting or interfering with any of the property, which was said testator's or which is of his estate. (9) Such other and

further relief at any stage of this action as is proper, including amendments to bring in any other parties necessary to a complete adjudication of the subject-matter.

The material portions of the will and codicil, and the facts pertinent to the question, are stated in the opinion.

*B. E. Valentine* for appellant. If the provisions of this will for the charity are valid to any extent, there is no question as to the right as well as the duty of the people to bring and maintain this action. (*Owens* v. *M. Society*, 14 N. Y. 408; Perry on Trusts, § 732.) The provisions (of the will and codicil) for the public charity are valid as to all the funds which will constitute the residuary estate. (*Owens* v. *M. Society*, 14 N. Y. 408; *Beekman* v. *Bonsor*, 23 id. 310; Laws of 1875, chap. 176; *Winter* v. *Perratt*, 6 M. & G. 350; *Smith* v. *Bell*, 6 Pet. 68; *Taggart* v. *Murray*, 53 N. Y. 236; *Wager* v. *Wager*, 96 id. 172; Perry on Trusts, §§ 629, 630; 2 Story's Eq. Juris. § 1165; *Riker* v. *Leo*, 115 N. Y. 103.) The codicil did not contemplate that the corporation should be created by special charter. (*Cruikshank* v. *Home for Friendless*, 113 N. Y. 327; *Shipman* v. *Rollins*, 98 id. 311.) The corporation formed by testator could take the whole residuary estate. (Laws of 1875, chap. 176; *Lefevre* v. *Lefevre*, 59 N. Y. 440.) A corporation to be immediately formed by the executors could take the whole residuary estate. (*Robert* v. *Corning*, 89 N. Y. 225.) A corporation organized at any time prior to the death of the life tenants would ultimately take the funds put in trust for two lives. (*Shipman* v. *Rollins*, 98 N. Y. 311.)

*E. Schenck* for respondents Schenck and Simonson. The offers of the plaintiffs to introduce proof on the trial at the Special Term was properly refused. (Laws of 1875, chap. 176; *Mann* v. *Mann*, 14 Johns. 1, 9; *Arthur* v. *Arthur*, 10 Barb. 9; *In re Kelemen*, 57 Hun, 165; 113 N. Y. 337.) The provision contained in the second subdivision of the seventh clause of the will for the establishment of the Samuel Wood

Benevolent Institute (changed by the codicil to be applied to the founding of a college of music) was void, on the ground that it violated the statute against perpetuities. So far as the real estate was concerned the power of alienation was suspended for more than two lives. So far as the personal property was concerned, the absolute ownership was suspended for more than two lives. (*Cruikshank* v. *Home for Friendless*, 113 N. Y. 337; *Holland* v. *Alcock*, 103 id. 312; 1 R. S. [6th ed.] 723, 1101, § 15.) It is void also for its being within the discretion of the trustees to administer the trusts, and could not be enforced in a court. (*In re Will of O'Hara*, 95 N. Y. 403; *Prichard* v. *Thomson*, Id. 76, 80, 81; *Beekman* v. *Bonsor*, 23 id. 298; *Hewlett* v. *Elmer*, 103 id. 156, 160; *Tilden* v. *Tilden*, 54 Hun, 231.) It is equally void for uncertainty and indefiniteness both as to the subject and object of the bequest. (1 Jarman on Wills, 319.) The provision for the benevolent institute cannot be upheld under any law of charitable uses. (*Gottman* v. *Grace*, 112 N. Y. 299, 306; *Holmes* v. *Mead*, 52 id. 332; *Bascom* v. *Albertson*, 34 id. 584.) The provisions in the will and codicil in question are not such as to give the people any right to intervene. (*Dartmouth College* v. *Woodward*, 4 Wheat. 608; *People* v. *Booth*, 32 N. Y. 397; *Purdy* v. *People*, 4 Hill, 396; *People* v. *Ingersoll*, 58 N. Y. 1, 13–17; *People* v. *Clark*, 53 Barb. 171, 176.)

*J. T. Mareau* for Hewlett's executors, respondents. The disposition of the residuary estate was void. (*Cruikshank* v. *Home for Friendless*, 113 N. Y. 352; *Burrill* v. *Boardman*, 43 id. 254; *Shipman* v. *Rollins*, 98 id. 311; *Holland* v. *Alcock*, 108 id. 312; *Prichard* v. *Thompson*, 95 id. 76; *Holmes* v. *Mead*, 52 id. 332; *Levy* v. *Levy*, 33 id. 107; *Mayor, etc.*, v. *Simonson*, 55 Hun, 204; 119 N. Y. 660; *Wetmore* v. *Parker*, 52 id. 450, 460.) The gift was void for indefiniteness. (*Bascom* v. *Albertson*, 34 N. Y. 588; *Beekman* v. *Bond*, 23 id. 305.)

Gray, J. The institution of this action by the attorney-general of the state was with the object of establishing a testamentary

trust for public and charitable purposes, under the provisions of the will of Samuel Wood, deceased. The complaint charged the executors of the testator with wasting, squandering and appropriating to their own uses a large part of the residuary estate, and with having undertaken, by collusive proceedings in the courts, to defeat the testator's charitable provisions. The defendants, in their answers, objected, among other things, that the charitable trusts attempted to be created by the will were invalid. When the issues came on for trial the defendants' counsel moved for a dismissal of the complaint, inasmuch as upon its face it disclosed no cause of action; for the reason that the disposition of the residuary estate made by the will and codicil was void. The trial judge took that view of the complaint and dismissed it, and his decision has been sustained by the General Term.

We think their judgments were right. The testamentary dispositions in question were illegal, because they clearly contravened those provisions of the law which limit the period of time during which the ownership and power of alienation of estates may be lawfully suspended. That is the only proposition we are asked to review upon this record. The determination below, adversely to the claim of the people, concluded their action at once; whatever other questions were raised upon the pleadings, or might have been discussed. The charges against these executors are most grave and may not be without foundation as to their administration; but the testator's next of kin are the persons affected, and the law affords adequate remedy for any malversation in office by trustees or executors. That is not the province of the attorney-general, in such cases.

By his will Samuel Wood gave his residuary estate to his executors, in trust "to create, endow and forever maintain an institution in the city of New York, to be called The Samuel Wood Benevolent Institute," and he directed them, upon his decease, to apply to the legislature for an act incorporating it, "with power to take and hold real estate, and to be governed as hereinafter provided." He then proceeds

to define the purposes and object for which that institution should be entrusted with the property to be conveyed to it by his executors. By a subsequent clause of the will, "in order to secure harmony, efficiency and unity in the management of said institute," he appoints his executors its "sole and permanent trustees," and required that "they be inserted in any act of incorporation as such trustees," and provided that they should fill vacancies occurring in their body "so long as such institute shall exist as a corporate body or otherwise."

By a codicil, the testator makes a change in his will and directs "that the devise and bequest provided in my said will with regard to the founding of 'The Samuel Wood Benevolent Institute,' * * * be changed, and the provisions thus made therefor be applied to the founding of a musical institution, to be known and called 'The Samuel Wood Musical College.' * * * It is my wish that a college of music be formed in the city of New York, and that appropriate legislation and means be adopted to perfect the incorporation and general plan of the institution, as near or similar to the plan or method given in my will with regard to the formation of 'The Samuel Wood Benevolent Institute.'" For some undisclosed reason, the testator, by this codicil, abandoned his previous testamentary scheme for a benevolent institution, the general purposes of which, beyond the care of certain relatives, contemplated the maintenance of a hospital, and he directed the creation of a college of music; but, as is quite apparent from the language he used in changing the application to be made by his executors of his residuary estate, the college of music was to be incorporated and organized upon the same plan as the benevolent institute. He says that the provisions made for the latter were to be applied to the founding of the musical college; so that it would be the duty of the executors, in carrying out the later residuary scheme, to have recourse to the directions in the will, in relation to such matters as concerned the period of time within which the charter should be obtained, and the plan for the government of the corporation which the act of incorporation should prescribe.

The effect of this codicil is to substitute, for the direction to the executors in the main will to found and incorporate the benevolent institute described there, the direction to found a public institution with another object, namely, the musical education of the people. There was no revocation of the testator's will effected by the codicil, save only as to the nature of the public institution designed to be incorporated and endowed. The effect practically was to write into the will "The Samuel Wood Musical College," in the place of "The Samuel Wood Benevolent Institute," as the beneficiary intended for the residuary gift, and to apply to it the same provisions as to incorporation and for a plan of corporate management. We have then, as we had in the will, the case of a gift to an unincorporated, non-existent institution, as in *Cruikshank* v. *Home for the Friendless* (113 N. Y. 337); an authority which I think must be controlling upon the disposition of this appeal. Since the case of *Burrill* v. *Boardman* (43 N. Y. 254), the non-existence of the corporate object of the testator's bounty cannot be urged as a fact of itself sufficient to defeat a testamentary trust. In that case the residuary bequest was for the founding and maintenance of the Roosevelt Hospital, in New York city. The trustees were directed to apply to the legislature for an act of incorporation, and a limitation of two lives was inserted in the gift as the time within which the legislature must act, failing which action a gift over was made to the United States government. In that case it was determined, as a new question, that the non-existence of the corporation, intended as the object of the testator's bounty, would not defeat his gift, if the incorporation was directed to be effected within the period allowed for the vesting of future estates. An executory bequest to the use of a corporation so to be created was upheld as valid. That case was a very pronounced departure from what was supposed to be the rule governing charitable bequests. The principle of the decision was that the bequest was not one to take effect as a gift *in presenti*, upon testator's death, but was limited to take effect upon the formation of the corporation designed, and as the contingency

upon which the limitation depended was possible and must happen within the period allowed by the law for the vesting of future estates, the bequest was as good in law, as though it had been to the use of an unborn child. The application of that legal principle prevented the avoidance of the bequest on the grounds urged by Judge COMSTOCK, the appellant's counsel, that the corporate donee was uncertain, and that the doctrine of charitable uses could not be invoked in its support. The decision was placed without the sphere of that argument, and within the doctrine and rules of law which govern in cases of executory bequests. Since that case to the present day, through various decisions of this court, of which *Shipman* v. *Rollins* (98 N. Y. 311) and *Cruikshank* v. *Home of the Friendless* (113 id. 337) are prominent exponents of our views, the non-existence or non-incorporation of the corporation designed by the testator cannot be considered as facts determinative of the invalidity of the testamentary bequest. The question of validity is to be determined by a consideration of whether the conditions of the law are met, as to the vesting of estates. Those conditions are to be strictly maintained and their violation sedulously guarded against.

Since the decision of *Bascom* v. *Albertson* (34 N. Y. 584), which definitely held that the English law of charitable uses had been cast off in this state, it has been no longer open to question that a trust, or a use, is only valid when within our statutes, which regulate the creation of uses and trusts and the period within which the ownership and the power of alienation of estates may be suspended. They constitute the sole guide in determining the validity of all trusts. The effect of the decision in *Burrill* v. *Boardman* (*supra*) was to extend the protection of the statutes to cases of executory bequests, where the corporate beneficiary, in which the equitable title was to vest, might be non-existent, and to sustain the trust, because the corporation was possible of creation and would take within the lawful period for the vesting of future estates. The intended beneficiary, if capable of being incorporated under the law, in the manner and for the purposes described

by the testator in his will, would not be obnoxious to the particular objection of indefiniteness.

In the recent case of *Cruikshank* v. *Home of the Friendless* (*supra*), the executors were to apply as soon as practicable to the legislature for an act incorporating the home. The trust was held incapable of being sustained, for the reason that the incorporation was dependent upon the will of the legislature and its consent, however reasonably to be anticipated, nevertheless, was not a certain result of the application to be made to it, and there would be a period of delay contingent upon the action of the state and not measured by lives.

In the present case it is contended that, as at the time of testator's death a general law had been enacted and was in existence, authorizing the kind of corporation mentioned by the testator, there was no necessity of applying to the legislature for a charter. The law referred to is contained in chapter 176 of the Laws of 1875, and was passed by the legislature before the making of the codicil and undoubtedly comprehended the several objects designed to be promoted by the testator by the use of his residuary estate. If the bequest were to a corporation to be created by the trustees of the will and which could be at once incorporated and organized under that general law, a new and interesting question would be presented. It might very well be said in such a case, that as it would be the duty of the trustees of the will to act at once, in procuring the incorporation, the delay in the incorporation would be but a mere incident to a certain result. (*Robert* v. *Corning*, 89 N. Y. 225 ; *Cruikshank* v. *Home of the Friendless*, *supra*.) The argument of appellant's counsel upon this subject would find some apparent support from the reasoning in the opinions in the cases of *Burrill* v. *Boardman* and *Cruikshank* v. *Home of the Friendless*.

If, by the terms of a testamentary gift in trust of property, its ownership must be necessarily uncertain for a period of time not measured by the statutory lives, the statute intervenes and condemns it. But where the delay is merely incidental and caused by the formalities and details of incorporation of

the body to take, and its creation is possible and certain to be effected under the general law, in accordance with the directions of the testator, it might present a fair question whether the law would be violated; if we apply to such a case the principles stated in the opinions in *Burrill* v. *Boardman* and *Robert* v. *Corning.* But we are not called upon to decide that question now. Such is not the case before us.

It was argued in the *Cruikshank* case, in the endeavor to save the trust, that the home might be incorporated under the general law; but the argument was ineffectual. We held that the testator had not intended such a corporation; but had specifically required one formed under a special charter, and that we could not substitute something different and outside of his expressed purpose. In the present case the same difficulty arises, if we would strive to sustain the trust for the musical college. The general law, enacted in 1875, requires incorporation under its provisions upon a different plan. The corporation to be created must have not less than seven trustees; whereas the testator here requires that the management shall be by his three executors, as " sole and permanent trustees," and provides for their being a self-perpetuating body. This requirement is in an especial clause of the will, following after the direction for the creation of the benevolent institute. It appears to be of the essence of the testamentary scheme and is the mode of government referred to in the previous direction for the creation of the institution, by the language " to be governed as hereinafter provided." These provisions are not revoked by the codicil; neither actually, nor constructively. On the contrary, they are explicitly retained and made applicable to the institution substituted by the codicil in the place of the one mentioned in the will.

Thus, if we consider the argument that the musical college could be incorporated under the act of 1875, and thereby become competent to take the testamentary gift, we are met by the difficulty that the restrictions of that act make it inappropriate to the testator's design; an objection which, under our decision in the *Cruikshank* case, cannot be disregarded and

passed over. If the argument is that appropriate legislation may be had, modifying the general law in the respects desired by the testator, so as to permit of the incorporation, we would still encounter the objection stated in the *Cruikshank* case that the creation of the corporation would ·be dependent upon the will of the legislature, and, hence, a delay would be certain to ensue, contingent, not upon lives, but upon the consent of the legislative body, which might be withheld. As the period of time for obtaining a charter for an institution of similar design, in plan or method, to that required for the benevolent institute, was limited by the testator to be within the life of the longest liver of his executors, of whom there were three named in the will, and in the codicil the number was increased to four, the delay in the vesting of the bequest would exceed that permitted by the law ; which limits the suspension of ownership and of the power of alienation of property to two lives in being.

These views lead to an affirmance of the judgment. The respondents should have their costs of the appeal, to be paid by the appellants.

All concur.

Judgment affirmed.