THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* DANIEL W. POWERS, Personally (Appellant) and as Executor and Trustee, etc., of MARTHA DUNLAP, Deceased, Impleaded with Others.

*Trust for "charitable and benevolent corporations" of a city — when sufficiently specific — designation of beneficiaries — judicial notice of organized charities — application of a fund for the benefit of others, enforced — right of the Attorney-General to institute a suit to enforce a charitable trust, not limited by Code of Civil Procedure, § 1781 — refusal of charitable corporations to collect a bequest — parties to the suit.*

A testatrix, by her last will and testament, devised and bequeathed certain property to her sisters for life, and further therein provided as follows :

"I give, bequeath and devise unto Daniel W. Powers, of Rochester, N. Y., all the property given and devised by the eleventh clause of this will, which shall remain after the execution and termination of the said trust at the death of said Nancy and Mary Dunlap. This gift and devise is made upon the trust and confidence reposed in the said Daniel W. Powers that he will dispose of the said property among the charitable and benevolent institutions or corporations in the city of Rochester, as he shall choose, and such sums and proportions as he shall deem proper."

*Held*, that the words "this gift and devise is made upon the trust and confidence reposed in the said Daniel W. Powers," etc., were sufficient to create a trust, as the other necessary conditions existed, the testatrix having pointed out with sufficient certainty both the subject-matter and the objects of the trust.

To sufficiently designate in a will the beneficiaries of a trust thereby created, it is not necessary that they should be named in the will. It is sufficient if power be given to the trustee to select the object of the trust, provided the persons or corporations are so defined and limited in the will that a court of equity would

have power to enforce the execution of the trust, or in default of a selection by the trustee, to decree an equal distribution among those from whom the selection might have been made; the objects of the trust must, however, be so limited by class, or kind or locality, that the court can, within the limits of a reasonable investigation, ascertain what they are, and that they are actually existing and devoted to the purposes for which the testator's bounty is intended, and come within the specified objects from which the selection might have been made.

The court can take judicial notice of the fact that in every large city there are organized charities, but cannot take such notice as to how many there are or for what special purpose they are established ; there is no presumption that the charitable institutions in a certain city are so numerous that they cannot be easily ascertained.

Where a bequest is made to a class of beneficiaries specially designated and confined so that each one can be readily ascertained, the bequest is sufficiently definite and will be upheld.

It is in all cases the duty of courts, where a testatrix has sought by will to dispose of property for charitable uses, to sustain such disposition if it can be done without a violation of the rules for the construction of such bequests.

A person who knows that a testatrix intends that a bequest to him shall be applied to the benefit of others, and, by express promise or silent acquiescence, encourages the making of such a bequest, will be compelled to carry out the intention of the testatrix, if it can possibly be done; the fact that such legatee has the right of selection of the beneficiary does not make the power given to him less imperative.

A devise for benevolent purposes alone does not create a charity and is not valid, but when the word "benevolent" is used in connection with the word "charitable" the former is synonymous with the latter, and a bequest to "benevolent or charitable" objects is valid.

The People of the State of New York, like all other parties to actions, must show an interest in the subject-matter of the litigation before they can prosecute a suit, but the interest which entitles or requires the Attorney-General to sue in the name of the People of the State may be something other than a right to the recovery of money or property. The right to interfere arises when a right to be asserted or a wrong to be redressed affects the whole or a large part of the community and is public in its nature. A devise for a charitable purpose is a public use, and in order to be a valid trust for a charitable use there must always be some public benefit open to an indefinite and vague number, and unless that exists the trust is not charitable.

The People of the State of New York have such an interest in the administration of a public charity as to warrant the Attorney-General in bringing a suit in the name of the People of the State to enforce it, where his interference is necessary.

There is no difference in principle between the refusal of charitable corporations to claim and collect a fund, which is undoubtedly theirs, and a refusal to collect any securities which they might own and allowing them to be lost. In

either case the effect of their action would be to waste the fund to which they were entitled and which it was their duty to protect and apply, and the Attorney-General is authorized in such a case to institute a suit to protect the rights of such corporations as the interests of the People are jeopardized by such inaction on their part.

The statutory power given by the provisions of section 1781 of the Code of Civil Procedure does not in terms or otherwise affect or take away the duty of the Attorney-General to proceed under the provisions of the Revised Statutes or at common law to prosecute such suits as are necessary to protect the interests of the People of the State.

In an action brought by the Attorney-General in the name of the People of the State to enforce a charitable trust, not only the corporations which refuse to act and compel the distribution of the trust fund, but also the person who wrongfully withholds the estate that has been devoted to their use, must be made parties in order that full relief may be granted.

APPEAL by the defendant, Daniel W. Powers, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Monroe on the 29th day of May, 1894, upon the decision of the court, rendered at the Monroe Special Term, overruling the demurrer of the defendant, Daniel W. Powers, to the complaint.

*George F. Danforth,* for the appellant.

*Theodore E. Hancock, Attorney-General,* and *Theodore Bacon,* for the respondent.

Interlocutory judgment appealed from affirmed, with costs, on the opinion of RUMSEY, J., at Special Team, with leave to the defendant to withdraw demurrer and answer over within twenty days on payment of the costs of the demurrer and of this appeal.

LEWIS and BRADLEY, JJ., concurred; DWIGHT, P. J., not voting; HAIGHT, J., absent.

The opinion of the Special Term was as follows:

RUMSEY, J.:

The second ground of demurrer is clearly not well taken for several reasons. It does not appear upon the face of the complaint that there are any other charitable and benevolent institutions or corporations in the city of Rochester other than those made parties. If there are it does not appear that the demurring defendant is prejudiced by the non-joinder. (*Anderton* v. *Wolf,* 41 Hun, 571.)

The plaintiffs are the People of the State suing though the Attorney-General. The complaint says that one Martha Dunlap, a resident of Rochester, died there on the 15th day of May, 1882, leaving a large estate, having previously made her will, dated March twenty-second of the same year. She had never married. Her only next of kin were two sisters, each owning an estate of over $100,000. It is stated that the defendant Powers had for many years had charge of the management of the estate of each of the sisters; had been their confidential and trusted adviser in regard to their affairs and the custodian of their money and securities; and was regarded by Martha Dunlap with especial trust and confidence. It is alleged that the defendant was himself at that time a man of large wealth, from which it is fairly to be inferred that the testatrix felt no particular obligation to make him the absolute devisee of her estate for his own benefit. The will which she made was drawn by the defendant, and after some legacies contained a bequest to the defendant of the rest and residue of her property, in trust for the testatrix's sisters during their lives. Then follows the clause which has given rise to this litigation. It is as follows:

"I give, bequeath and devise unto Daniel W. Powers, of Rochester, N. Y., all the property given and devised by the eleventh clause of this will which shall remain after the execution and termination of the said trust at the death of said Nancy and Mary Dunlap. This gift and devise is made upon the trust and confidence reposed in the said Daniel W. Powers that he will dispose of the said property among the charitable and benevolent institutions or corporations in the city of Rochester as he shall choose, and such sums and proportions as he shall deem proper."

The defendan it is alleged, was nominated as executor; was appointed by the surrogate and took upon himself the duties of that office and reduced the estate to possession. No part of the income of the estate of Martha Dunlap was used for the support of her sisters, their own property being ample for that purpose, and the last of the two sisters died in 1889. The complaint then states that Powers never made any distribution of the estate of Martha, bequeathed to him by the above clause of her will; nor in any way acted in discharge of the trust, nor even acknowledged it; but in the year 1892 he repudiated the trust and denied any obligation to distribute any

part of the estate pursuant to it, and still so refuses and denies. The five defendants, other than Powers, are corporations organized for charitable and benevolent purposes in the city of Rochester, and in which Martha Dunlap had a special interest. It is alleged further that each of these corporations has either expressly refused or neglected to begin any suit for the enforcement of the trust. Judgment is asked that the trust expressed in the foregoing paragraph of Miss Dunlap's will be adjudged valid and enforcible, and for other relief which need not here be specified.

There are other allegations in the complaint, but they do not appear to be material upon this issue, whatever may be their bearing should there ever be a trial of the action.

The defendant, Powers, in his demurrer, in addition to the charge that there is a defect of parties, objects that the complaint does not state facts sufficient to constitute a cause of action, and in this way are raised the serious and interesting questions presented in the case. That the words " This gift and devise is made upon the trust and confidence reposed in the said Daniel W. Powers," etc., are sufficient, if other conditions exist to create a trust, cannot be denied. (Perry on Trusts, § 112 ; *Bull* v. *Bull*, 8 Conn. 47 ; *Harrison* v. *Harrison*, 44 Am. Dec. 365 and note, 372, 373.) These conditions are that the testator has pointed out with sufficient certainty both the subject-matter and the objects of the trust. The subject-matter is clearly stated. Can it be said that the testatrix has designated the objects with sufficient certainty ? Has she so designated them that the court can ascertain who they are ? For that is the test as established by the court. (*Prichard* v. *Thompson*, 95 N. Y. 76 ; *Read* v. *Williams*, 125 id. 560.) But to sufficiently designate the beneficiaries it is not necessary that they be named in the will. If power is given to the trustee to select the object of the trust it will be sufficient, provided the persons or corporations are so defined and limited in the will that a court of equity would have power to enforce the execution of the trust, or in default of a selection by the trustee, to decree an equal distribution among those from whom the selection might have been made. Such is the rule on the subject laid down by the courts of this State. (*Power* v. *Cassidy*, 79 N. Y. 602 ; *Holland* v. *Alcock*, 108 id. 312.) Obviously the application of this very general rule requires that the objects of the trust

be so limited by class or kind or locality that the court can within the limits of a reasonable investigation ascertain what they are; that they are actually existing and devoted to the purposes for which the testator's bounty is intended; and come within the specified objects from which the selection might have been made. In this case I think they are so limited. The precise number of charities which are situated within the city of Rochester does not appear. Five are named in the complaint. Whether or not there are more is not stated. The court can, no doubt, take judicial notice that in every large city there are organized charities, but not how many there are nor for what special purpose they are established. But there can be no presumption that the charitable institutions in the city of Rochester are so numerous that they could not be easily ascertained. The leading case on the subject is *Power* v. *Cassidy* (16 Hun, 294; 79 N. Y. 602). That was an action for the construction of a will. The devise in question was to the executors of the testator "to be divided by them amongst such Roman Catholic charities, institutions, schools or churches in the city of New York, as a majority of my executrix and executors shall decide, and in such proportion as they may think proper." The case came on for hearing at Special Term before Judge VAN VORST, than whom no man was more familiar with questions of that nature or more able in disposing of them. His opinion is reported in 16 Hun, 296. He says, among other things, "the duty of designating the particular institutions from the general class is devolved upon the executrix and executors, who are also to determine the amount each should receive, and when that has been done, the action would have the same effect as though the names of the particular institutions and charities were written in the will." He further says: "They (the beneficiaries in the will) are distinct, and can readily be separated from the large number of religious and charitable organizations of New York, maintained by other christian or benevolent bodies. They, in fact, constitute a limited and well-defined class, have each a distinct organization, and are bodies corporate." It appeared in that case that several Roman Catholic institutions in the city of New York were unincorporated; a fact, by the way, which does not appear in the case at bar. But it was held by Judge VAN VORST and by the General Term that such fact was not important,

so long as it appeared, as it did, that there were schools and institutions, answering the description, incorporated and competent to take, because the presumption was that the testator meant his trustees to select competent beneficiaries. Upon appeal the Court of Appeals affirmed the judgment, holding that as there were organizations of the class specified capable of taking, and which could be ascertained, the provision was not void for uncertainty; that the fact that power was given to the executors to select the beneficiaries and the share of each, did not impair the legality of the provision; and that the executors were limited to such organizations as were capable of taking (79 N. Y. 602). There is no difference in principle between that case and this, and hardly any difference in the facts. The case of *Power* v. *Cassidy* has been repeatedly discussed, but, so far as I can see, has never been overruled or even criticized. It is quite true that the doctrine of it has been limited, but the limitation only emphasizes the rule that where the class of beneficiaries is specially designated and confined, so that each one can be readily ascertained, the bequest is sufficiently definite and will be upheld. (*Prichard* v. *Thompson*, 95 N. Y. 76; *Holland* v. *Alcock*, 108 id. 312; *Fosdick* v. *Town of Hempstead*, 125 id. 581, 591.) It is in all cases not only the wish but the duty of courts, when one has sought to dispose of property for charitable uses, to sustain such disposition if it can be done without violation of the rules which have been settled for the construction of such bequests. (Perry on Trusts, § 709; *Saltonstall* v. *Sanders*, 11 Allen, 446, 454, 455, GRAY, J.) Much stronger is the duty in a case like this, where the will was drawn by the person named as trustee. The rule is, that one who knows that a testator intends that a bequest to him shall be applied to the benefit of others, and by express promise or silent acquiescence encourages the making of such a bequest, will be compelled to carry out the intention of the testator if it can possibly be done. (*Matter of Will of O'Hara*, 95 N. Y. 403.) In such a case the law should be applied with the utmost possible liberality to effectuate the intention.

The fact that the trustee has the right of selection does not make the power given to him less imperative. (1 R. S. 734, § 97.) It will be noticed that the discretion given to him is not as to whether or not the fund shall be divided, but only extends to the selection of the objects and the amount to be given to each. The sole differ-

ence between this case and that of *Power* v. *Cassidy* is that in the latter the executors had already exercised the power of selection. But that is of no importance. The question is what the executor and trustee may rightfully do, not what has been done. But that matter was disposed of by the Court of Appeals. (*Read* v. *Williams*, 125 N. Y. 560, 569.)

It was suggested upon the argument that the trust was invalid, because the objects of it were benevolent as well as charitable institutions; the argument being that while a trust for charitable institutions might be sustained, yet one for benevolent institutions was too broad, and might include institutions other than those which the law recognizes as charitable, and that, therefore, so much of the devise as went for the benefit of benevolent institutions was invalid. The conclusion was drawn that as all the estate might at the discretion of the executor be turned over to benevolent as distinguished from charitable institutions, the entire scheme was thereby made void. It cannot be denied that a devise for benevolent purposes alone does not create a charity and is not valid. (*Chamberlain* v. *Stearns*, 111 Mass. 267.) But the same court which so held has also decided that when the word "benevolent" is used in connection with "charitable" it is synonymous with it, and that a bequest to "benevolent or charitable" objects is valid. (*Saltonstall* v. *Sanders*, 11 Allen, 446; *Suter* v. *Hilliard*, 132 Mass. 412.) Such, I believe, now to be the law of England as pronounced by the highest court, overruling, or, at least refusing to follow, cases to the contrary. (*Miller* v. *Rowan*, 5 Cl. & Fin. *99; Perry on Trusts, § 705, 712, and note.) But in this will the discretion is limited not to charitable *or* benevolent institutions, but to charitable *and* benevolent institutions; so that no institution is within the terms of the devise, unless it is one of those which the law recognizes as charitable as well as benevolent. I have not forgotten the case of *Norris* v. *Thomson's Exrs.* (19 N. J. Eq. 307), in which it was held that a power of appointment "among such benevolent, religious or charitable institutions as she may think proper" was void because of the use of the word "benevolent." The court says that a devise for benevolent objects is too indefinite and is void, and that as the appointee might within the power have selected benevolent to the exclusion of charitable and religious objects, the whole devise was

invalidated. The decision is founded on certain English cases, which, as shown by Judge GRAY in *Saltonstall* v. *Sander's (supra),* have not been followed in that country. The court of New Jersey takes no notice of the collocation of the words "charitable or religious" with "benevolent," which was the ground of the decisions of the Massachusetts cases and the House of Lords. With regard to this case, it is to be noticed that the power was held to be too indefinite solely because it was extended to benevolent as well as charitable institutions. It is fairly to be inferred from the language of the opinion that if the power had been to appoint "to such charitable and religious institutions as she might think proper" it would have been sustained.

Having reached the conclusion that the devise is valid and that the defendant takes the property subject to the duty of disposing of it as directed by the will, the next question presented is whether this action can be maintained in the name of the People to enforce the trust. The objection to the action does not go to the jurisdiction of the court, for no one denies that the court has the jurisdiction to enforce this trust in an action of some kind. (1 R. S. 734, § 96; Perry on Trusts, § 694; Story's Eq. Juris. § 1191.) The objection is that the People have set up no cause of action in their favor, and, therefore, are not proper parties plaintiff. It is undoubtedly true that the People, like all other parties to actions, must show an interest in the subject-matter of the litigation before they can prosecute a suit. (*People* v. *Booth,* 32 N. Y. 397.) But when that principle is admitted we do not advance a step in this discussion, for still there remains the question, what is such an interest in the subject-matter as entitles the People to sue? In this case the People have no money to gain by a recovery. But the interest which entitles or requires the Attorney-General to sue in the name of the People may be something other than a right to the recovery of money or property. This appears from the fact that without the direction of any statute it is the duty of the Attorney-General in the name of the People to sue out writs of quo warranto with or without a relator; to sue out writs of mandamus; to proceed by scire facias to revoke grants improperly made or forfeited by the grantee; to proceed in equity if necessary to restrain public nuisances. In these matters, or several of them, the People have no pecuniary interest whatever,

The right to interfere arises solely because the right to be asserted or the wrong to be redressed affects the whole or a large part of the community, and is, therefore, public in nature. Where the matter is public, in that sense the People are interested. Is, then, a devise for a charitable purpose a public use? If it is, the People have an interest in its proper administration and the Attorney-General has the right and it is his duty to bring an action. (The Executive -- Law, § 52.\*) That a charitable use is a public use cannot be denied. Indeed, the validity of a trust for charitable purposes turns in many cases upon the fact that such trusts are public and not private in their nature. (Perry on Trusts, § 687.) In order to be a good trust for a charitable use, there must always be some public benefit open to an indefinite and vague number, and unless that is the case the trust is not charitable. (*Jackson* v. *Phillips*, 14 Allen, 571; Perry on Trusts, §§ 710, 712.) In view of that well-settled principle, it has always been held in England that the Attorney-General representing the king as *parens patriœ*, might proceed by information in a court of equity to establish a trust for charitable purposes, or to prevent or correct a misuse of the funds, and that Chancery took jurisdiction of such a suit by virtue of its general jurisdiction. The English law books are full of cases brought upon that principle and referable to that jurisdiction. While such actions are not so common in this country, yet they are known. In *Parker* v. *May* (5 Cush. 336), which was brought by the public prosecutor then acting as Attorney-General, the question was presented of his right to sue, and it was said by SHAW, Ch. J., that such a suit by the public prosecutor in the name of the Commonwealth for establishing and sustaining charitable trusts was in truth as well as in form a suit to protect public interests, and he held that it should have been brought in that way. Many years later, in the same State, the Attorney-General filed an information against certain persons who were trustees of a charitable fund, alleging that they refused to pay over the fund or to apply it to the purposes of the trust, and it was held that the information was sufficient, and that it was the right and duty of the Attorney-General to interfere in behalf of the proper administration of a public charity independent of the statute on that subject; and the remarks of Chief Justice SHAW were

*Laws of 1892, chapter 683 — [REP.

approved. (*Attorney-General* v. *Parker*, 126 Mass. 216.) In *Attorney-General* v. *Garrison* (101 Mass. 223) the court, upon the information of the Attorney-General, removed some of the trustees of a charitable trust, because they refused to carry out the trust according to its terms. The history of the litigation with regard to the trust in that case is interesting to show how far the People have an interest and the right to intervene in such cases. (*Jackson* v. *Phillips*, 14 Allen, 539.) Because of the interest of the public the text writers lay down the rule that in a proper case the Attorney-General may bring a bill to establish the trust or to correct abuses in its administration. (Story Eq. Juris. § 1191; Perry on Trusts, §§ 732, 744.) In this State the nature of the interest which would authorize the Attorney-General to sue in the name of the People, was discussed by Judge DUER in *Davis* v. *Mayor* (2 Duer, 666, 667). The learned judge held that wherever the wrong complained of was public in its nature, the People were proper parties, and he required the Attorney-General to be made a party to that action. His action was affirmed by the General Term (3 Duer, 119), but reversed by the Court of Appeals for reasons which did not at all conflict with his views on that subject. (*Davis* v. *Mayor*, 14 N. Y. 506.) In *Owens* v. *Missionary Society* (14 N. Y. 380) it is plainly stated by Judge SELDEN that the remedy by information at the suit of the Attorney-General in the name of the People is as available here as in England. Four other judges concurred in his opinion, and gave to that dictum the weight of their authority.

In *Attorney-General* v. *Utica Ins. Co.* (2 Johns. Ch. 371) Chancellor KENT, denying the power of the Court of Chancery to interfere with private corporations by way of restraining violations of law at the suit of the People, admitted that in the case of a charitable institution the Court of Chancery at the suit of the People had jurisdiction to redress abuses of their trusts. In *People* v. *Miner* (2 Lans. 396) it is held by Judge MULLIN, delivering the opinion of the court, that the Attorney-General may sue in equity to enforce trusts or prevent the use of trust powers. From these holdings and dicta I think I am warranted in the conclusion that the People have such an interest in the administration of a public charity as to warrant the Attorney-General here, as in England and Massachusetts, in bringing a suit to enforce it where his interference is necessary.

Is this a proper case? It appears from the complaint that the donee of the power repudiates it and refuses to carry it into effect and claims the fund himself; that the five corporations named refuse to sue, although five years have passed of the six or ten which must elapse before their claim will be barred; that there are others than the five who might sue does not appear. If there are such no action has been taken by them. The result of this is that the fund will speedily be lost unless the People interfere. The five corporations undoubtedly might sue if they would, but they refuse. If they were private corporations, having no public duties, that would be the end of it, but they are not that alone. Their duties are public and such as the People have an interest in and can control. If they, having this fund in possession, had mismanaged or wasted it, or refused to apply it to the purposes of their trusts, the court no doubt would have the power to correct their action or even to remove them. (Perry on Trusts, § 744; Story's Eq. Juris. § 1191; *Atty.-Genl.* v. *Parker*, 126 Mass. 216.)

The reason is that the People have an interest that the fund shall be devoted to the purpose for which the testatrix intended it. The corporations have by law the right to the fund for public purposes. It is, therefore, their duty to take steps to procure it. If they refuse, and by that refusal they lose the fund, it is quite as much a breach of their duty as though having it, they had misapplied it. I can see no difference in principle between the refusal of a charitable corporation to claim and collect a fund which is undoubtedly its and a refusal to collect any securities which it might own and allowing them to be lost. But, in the latter case, no one would question the right of the People to interfere. In either case the effect of its action would be to waste the fund to which it was entitled and which it was its duty to protect and apply.

The foundation of the duty of the Attorney-General to sue is that unless he proceeds the fund will be lost or wasted. If that condition of affairs exists it is no matter whether it comes to exist because of lack of power of some one to sue, or because the person who should sue, through collusion or otherwise with the wrongdoer, refuses to act. In each case the interests of the People are jeopardized and the duty of its law officer begins. The case of *The People* v. *Simonson* (126 N. Y. 299) is vastly different. There

there was no trust for charitable purposes, and nothing but that was decided or discussed.

It is said that the Attorney-General might have proceeded against these corporations under section 1781 of the Code of Civil Procedure. Possibly that is true. But the statutory power given in that section does not, in terms or otherwise, affect or take away the duty of the Attorney-General to proceed under the provisions of the Revised Statutes, now incorporated into the Executive Law, or at common law, by prosecuting such suits as are necessary to protect the interests of the People. But a suit, as provided by section 1781, would be of no avail here. All that could be done under that section would be to charge the officers with the consequences arising from a breach of their trust. The fund here could not be reached. It is doubtful whether Powers could even be made a party defendant in his capacity of executor or trustee.

Such an action would by no means accomplish the purpose which is sought, or which the necessities of the case require. That purpose is to reach this fund and compel its application to the public purpose for which the testatrix intended it and thus prevent its waste and misapplication. Not only the corporations, who refuse to act, but the person who wrongfully withholds the estate that has been devoted to their use, must be made parties that the full relief may be granted.

It can be done in this action, and because it can be so done and done in no other way, and because, if not done, the fund will be lost to public charity, I think this action can be maintained.

The plaintiff must have judgment on the demurrer, with costs, with leave to defendant to withdraw the demurrer and answer on payment of the usual costs.