62  445
10ap506

JENNIE E. WOOD, AS ADMINISTRATRIX, WITH THE WILL ANNEXED OF SAMUEL WOOD, DECEASED, PLAINTIFF, *v.* ROBERT M. NESBITT, DEFENDANT.

*Will — implied power of sale — when it passes to an administrator with the will annexed — when the power survives — equitable conversion.*

One Samuel Wood, by his will, after providing for certain legacies to be paid immediately; gave the rest of his estate to his executors, and the survivors of them, to them and their successors, forever, in trust, "to invest and provide for the payment" of certain life annuities created by his will, and to create, endow and maintain a college of music. He required them to invest the money of the annuitants in personal securities. The estate consisted almost wholly of real property, the personal estate being insufficient to pay the legacies directed to be paid immediately.

The executors sold the real estate, squandered much of the proceeds, and never set aside the sums specified in the will for the annuities. The trust relative to the musical college was declared void.

The last executor having been removed, an administratrix, with the will annexed, was appointed, who entered into a contract to sell certain real estate, which the vendee refused to perform.

In an action brought by the administratrix to compel a specific performance of the contract:

*Held*, that the executors had an implied power of sale, as the provisions relative to the annuities could not be carried out without a sale of the real estate.

That this power of sale was annexed to the office of executor, and passed to an administratrix with the will annexed.

That this view was confirmed by the fact that the word "successors" was used in the clause devising to the executors the residuary estate.

That the fact that the executors sold sufficient real estate to provide for the annuities did not extinguish the power of sale, as the power, by its terms, was not confined to the satisfaction of the annuities.

That the fact that executors may have disposed of enough of the realty to satisfy legacies or annuities does not relieve the estate from their burden where the executors have not paid the beneficiaries in full.

*Semble*, that where there was no personal estate applicable to the purpose a devise to executors of the residuary estate, in trust, "to invest and provide for the payment" of certain annuities, constituted a conversion of the estate into personalty, at least so far as the executors were concerned.

SUBMISSION of a controversy between Jennie E. Wood, as administratrix, with the will annexed, of Samuel Wood, as plaintiff, and Robert M. Nesbitt, as defendant, under the Code of Civil Procedure (§ 1279 *et seq.*)

The question in difference, submitted to the court, was: Whether the said Jennie E. Wood, as such administratrix, was entitled to recover judgment against Rcbert Nesbitt for the sum of one hundred dollars cash and for the execution of a bond and mortgage for the balance of the purchase-money of a certain parcel of land, a deed of which had been duly tendered to said Nesbitt, in pursuance of a contract for the purchase thereof by him from such administratrix.

*Magner & Hughes*, for the plaintiff.

*Charles F. Halstead*, for the defendant.

ANDREWS, J.:

This action comes before the court upon an agreed case containing a statement of the facts upon which the controversy depends. The plaintiff is the administratrix, with the will annexed, of Samuel

Wood, deceased. The defendant is a purchaser from her of certain real estate, of which said Wood died seized. The defendant objects to the title of said real estate upon the ground that the plaintiff has no power to sell it, and this action is brought to compel the defendant to accept the title and pay the purchase-price.

The decision of the question presented depends upon the construction to be placed upon certain portions of the will of Samuel Wood. By that will the testator, after providing for certain legacies to be paid immediately, gave all the rest of his estate to his executors and the survivor or survivors of them, and to them and each of their successors, forever, in trust, to provide for the payment of certain life annuities, and the ultimate legacies depending thereon, and to create, endow and maintain an institution to be called the Samuel Wood College of Music. The testator directed and required his executors to set apart out of his estate, and to securely invest in good interest-paying securities, preferring mortgages on unincumbered real estate, and to keep securely invested to pay such annuities, the several sums of money given to the annuitants. The will provided for twenty-three annuitants, and the several sums which the executors were required to invest for their benefit amounted to about $198,000. Where the annuitants had children the trust to pay the income was limited to two lives, and on the termination of the second life the principal was in most instances given absolutely in remainder. In cases where there were no children of annuitants, the principal was to become a part of the residuary estate, on the death of the annuitant. Of the $198,000 the sum of $99,000 was to go to remaindermen, and the sum of $99,000 was to revert to the residuary estate. Nearly all of testator's property, both when the will was made, and at the time of his death, consisted of real estate. The will gave $53,500 in legacies, payable absolutely and immediately, and the personal property of the testator was not sufficient to pay such legacies and the valid claims against the estate. Most of the real estate was sold, and the money received therefor was placed in the general bank account of the executors, and was drawn upon by them for all the purposes of the estate. According to the statement of facts, the executors appear to have misappropriated a large amount of such money in various ways, which amounted to a *devastavit* of the estate. Among the various payments which they

made were $150,000 for salaries to themselves, and over $150,000 for attorney and counsel fees and expenses of litigation. There were originally four executors, three of whom died, and the fourth was removed. No sums of money were ever set apart or invested by the executors for the purpose of producing the annuities, but sums of money were paid to the annuitants, once in six months, as if for interest, and were drawn out of the bank from the principal of the proceeds of the sales of the real estate. The annuitants were, for the most part, ignorant of the fact that no investments had been made for them. The trust created for the College of Music was declared void by the Court of Appeals (*People* v. *Simonson*, 126 N. Y., 299), so that the testator died intestate as to all his residuary estate, and his sole next of kin and heir-at-law was one Abraham Hewlett. Said Hewlett was an annuitant, and appears to have been a party to the *devastavit*, and knew that no investments had been made for the annuitants. After a large portion of the real estate had been sold, and before the decision of the Court of Appeals above mentioned, the said Hewlett entered into a written agreement with the then two surviving executors, which contemplated a settlement with the annuitants, and a division of the remainder of the estate between the three parties to that agreement.

Thereupon, in consequence of various misrepresentations made to them, many of the annuitants released their claims, but, afterwards, finding that they had been deceived, demanded a surrender of such releases ; and the removal of the last executor Simonson was based, in part, on his misconduct toward such annuitants. Subsequent to the obtaining of the releases Hewlett died, and his only heirs-at-law, who are collateral descendants of a paternal grandfather in many degrees removed, are scattered through different States, and are nearly one hundred in number. Some of the annuitants, and among them one Joseph F. Wood, have never been settled with, nor have they executed releases, nor have they had any funds set apart for them. Upon the removal of the last executor plaintiff was appointed administratrix with the will annexed, and she entered into a written agreement for the sale to the defendant of a parcel of land of which the testator died seized, by the terms of which agreement defendant was to pay for the land $100 in cash, and $400 was to be secured by a bond and mortgage, executed to the plaintiff, her successors and

assigns, in trust for said Joseph F. Wood during his life, and for his heirs after his death.

The first objection made on behalf of the defendant to the title is that an administratrix with the will annexed has no power to sell real estate. This objection is not well founded. It is true that an administrator, with the will annexed, has no power to sell real estate by virtue of his office merely; neither has an administrator nor an executor such power. It is only by virtue of some direction in the will that either obtains such power; and where the will gives the executor a discretionary power of sale such power does not pass to the administrator, with the will annexed. In the case at bar, however, the power to sell was not a discretionary one, for the provisions of the will in regard to the annuities could not be carried out, except by a sale of the real estate, pursuant to the power expressly given to the executors by the eighth paragraph of the will.

In *Mott* v. *Ackerman* (92 N. Y., 539), FINCH, J., who delivered the opinion of the court, said: "We have no doubt, therefore, that where a power of sale is given to executors for the purpose of paying debts and legacies, or either, and especially where there is an equitable conversion of land into money for the purpose of such payment, and for distribution, and the power of sale is imperative, and does not grow out of a personal discretion confided to the individual, such power belongs to the office of executor, and, under the statute, passes to and may be exercised by the administrator with the will annexed."

In the case at bar there was no personal property whatever which could be invested to provide the annuities, and a sale of the real estate was absolutely necessary in order to make provision for them. The power to sell was, therefore, not a discretionary one, and upon the removal of the last executor passed to the plaintiff as administratrix with the will annexed.

The case of *Cooke* v. *Platt* (98 N. Y., 35) does not apply, for in that case the trust, which the testator attempted to create, was held to be invalid; the power given to sell was not imperative, and if the discretionary power of sale, which was given, had been exercised, the only effect would have been to distribute the proceeds among heirs, who were already vested with the title to the real estate.

Moreover, it may be plausibly claimed that, assuming that the testator's property retained its character as realty, the power to sell such realty is given to the plaintiff, in terms, by the will itself. The devise of the residuary estate, contained in the seventh clause, is not made to the executors only, but to their and each of their "successors;" and the express power of sale, given by the eighth clause, is given, not "to my executors" only, but also "to their successors." The only "successor" to an executor is an administrator with the will annexed, and it would seem that the will thus expressly confers the power to sell all the real estate upon any one who should succeed the executors in their office.

The second objection to the title is, that, because the original executors sold enough of the realty to have provided sufficient investments for the annuitants, therefore, the power of sale is at an end. Neither is this objection well founded. The will gave the executors power to sell not merely enough of the estate to provide for the annuities, but "all and every part of the estate." It also contained directions about the disposal of the proceeds of the entire estate, and neither the power, nor the duty, to sell ended until the necessary funds had been actually set apart and investments had been made for the annuitants. It was not until ten years after the testator's death that it was decided that the trust for the School of Music was invalid, and there are no grounds upon which it can be claimed that the real estate, so far as it was disposed of by the executors, was sold merely for the purpose of raising funds to be invested for the annuitants.

The entire proceeds of the real estate sold were not required to raise the annuities. It was the duty of the executors to have applied part of such proceeds in executing the trust to endow and maintain the college of music. It is impossible to say now whether the moneys wasted were those which should have been used to raise the annuities, or those which should have gone to create a fund for such college. Where annuities are charged on realty generally the entire estate of the testator is liable until the charge has been satisfied. The rule contended for by the defendant, that "as soon as an executor has disposed of enough of the property of the testator to satisfy legacies the general estate is relieved of their burden, and that the legatees' claim is against the executors personally," would be a very

harsh and unjust one. Ordinarily it would be wholly impracticable for legatees to keep themselves informed of all the proceedings of an executor, and they are not bound to do so under peril of losing their interest in the estate. Until the beneficiary of a trust fund has his fund separated from the general funds of the estate, and set apart for his benefit, he is not divested of his right to look to the general estate for his satisfaction. An executor cannot be regarded as an agent of a legatee or an annuitant until the fund is set apart from the rest of the estate and invested separately for the beneficiary. If the fund has been so separated and set apart and is then misappropriated, the loss must fall upon the *cestui que trust*, but until the fund is separated from the general funds of the estate the executor represents such estate only. In the case at bar a large number of the annuitants were infants, and others were aged and infirm persons, and it would be a great injustice if they are to lose all benefits under the will because of the misconduct of executors over whom they had no control, and if the proceeds of the remaining real estate are to go to the distant relatives of Abraham Hewlett, who was himself a party to the *devastavit* of the estate, and largely profited thereby. Moreover, the only person who, if living, could object to the sale made by the plaintiff to the defendant would be the said Hewlett, and his participation in the misconduct of the executors would estop him from raising such objection; and those claiming under him are in no better position than he would be, if alive.

Again, there is another view which may be taken of the case which would seem to render any discussion about the power to sell real estate unnecessary.

The language of the will is: "I give, devise and bequeath all the rest, residue and remainder of my estate, real, personal and mixed, * * * to my executors * * * in trust, * * * to invest and provide for the payment of the life annuities hereinbefore created." There was no personal estate which could be applied to raising the annuities, and in order to carry out this and other provisions of the will, it was absolutely necessary to sell all the relator's real estate. it would seem, therefore, that there was an equitable conversion of all of the testator's real estate, and that the same must be regarded as personalty from the time of the testator's death, so far as the rights of annuitants and the duties of the executors are concerned.

(*Byrnes* v. *Baer*, 38 N. Y., 220 ; *Kalbfleisch* v. *Kalbfleisch*, 67 id., 364 ; *Greenland* v. *Waddell*, 116 id., 234.)

The question as to the rights of those annuitants who have executed releases is not before the court, but we are of the opinion that, for the purpose of providing money to raise the annuity given by the will to Joseph Wood, the plaintiff had the power to sell the property in question to the defendant, and to execute to him a valid deed thereof.

Judgment should, therefore, be entered in favor of the plaintiff against the defendant for the sum of $100, and requiring the defendant to execute the bond and mortgage provided in the contract of sale. No costs should be allowed to either party.

VAN BRUNT, P. J., and BARRETT, J., concurred.

Judgment for plaintiff against the defendant for $100, and defendant required to execute the bond and mortgage provided in the contract of sale, without costs to either party.