(10 App. Div. 491.)

## In re ATTORNEY.

(Supreme Court, Appellate Division, Second Department. December 1, 1896.)

1. ATTORNEYS—MISCONDUCT—ENTERING FALSE JUDGMENT.

It is misconduct for plaintiff's attorney, after a verdict rendered pursuant to an agreement between the parties for settlement of the controversy by reducing the amount demanded, to amend the complaint, and procure the clerk to enter judgment reciting that plaintiff withdrew two causes of action, and that the verdict was rendered on the remaining issues, and it is immaterial whether the agreement for settlement was signed before or after the verdict.

2. SAME—FRAUD—ASSIGNMENT OF CLAIMS.

Where an agreement to settle an action provides that plaintiff shall release all claims against defendants, it is fraud for plaintiff's attorney to procure an assignment to himself of one of the claims in dispute.

3. SAME—WHEN FRAUD IS CURED.

It is misconduct for an attorney to establish, as an offset in an action against him, a claim which he knows is void, and the misconduct is not cured by the fact that he also proved valid offsets equal to the claim against him.

4. ATTORNEYS—CORRECTING EFFECTS OF MISCONDUCT.

Misconduct of an attorney is not cured by his consent, under legal compulsion, to an order rectifying the effects thereof.

5. SAME—SUBMITTING FICTITIOUS CASE.

It is misconduct for an attorney, pretending to submit an agreed case under Code Civ. Proc. § 1279, to submit a fictitious case, in order to obtain a decision for other purposes than the determination of a real controversy.

6. SAME—STATEMENT IN AN AGREED CASE.

It is misconduct for an attorney submitting an agreed case under Code Civ. Proc. § 1279, to present only a partial statement of material facts known to him.

7. SAME—REASONABLE DOUBT OF MISCONDUCT.

The fact that a reported case is apparently controlling, and may have been so understood by an attorney, is sufficient to raise a reasonable doubt whether he willfully deceived a court, when he cited such case as controlling, without informing the court of unreported decisions known to him which discredited it.

Petition by Charles Hewlett to strike the name of an attorney from the roll of attorneys and counselors of the supreme court, and to forbid his practicing in any state court. A referee was appointed to take testimony, and duly reported.

Argued before BROWN, P. J., and CULLEN, BARTLETT, and HATCH, JJ.

Byron Traver, for petitioner.

Albert E. Lamb, for respondent.

HATCH, J. The petition which forms the basis of this proceeding was made by Charles Hewlett, a resident of the county of Queens, in this state. Four charges of misconduct upon the part of the respondent are set forth in the petition with particular specifications in connection with each charge. Upon this petition an order was obtained from the general term of this court requiring respondent to show cause why his name should not be stricken from the roll of attorneys and counselors of the supreme court, and why he should not be debarred from practicing in any of the courts of this state. Upon the return of such order to show cause the defendant filed an answer wherein he denied each of the charges contained in the petition, and, in addition thereto, alleged matter in

explanation of the specific acts with which he was charged, tending to exonerate and show him guiltless of the same. Thereupon the general term made an order referring the matter to the Honorable George G. Reynolds to take proof upon the matters contained in the issue thus joined, and report to this court, with his opinion thereon. This has been done, and the report, with the evidence upon which it is based, is now before us for our determination.

Recognizing the gravity of the charges preferred, the standing of the respondent, the vital interest which he has in any determination which we may reach, and the duty which we owe the court, the members of the profession of the law, and the public, we approach the decision of this matter with a sense of grave responsibility, and a desire to do exact justice. To this end we have examined with care each document submitted for our inspection, have read carefully every word of the testimony taken upon the hearing before the referee, being not deterred therefrom on account of its volume, or discouraged by the irrelevancy of a great mass of its matter. We are much relieved in our labor, and fortified in the conclusion which we reach, by the evident fairness and ability of the referee in the conduct of the hearing, and the clearness of his report upon the facts. We do not deem it necessary, in the main, to extend the present discussion beyond a consideration of the first charge contained in the petition, and of the evidence offered in connection therewith. The allegation charges the respondent with being guilty of deceit and malpractice while acting as an attorney and counselor at law in the supreme court of this state. The particular acts alleged in support of this charge are, in substance, these: About the year 1886 the respondent, as attorney for the plaintiff, brought an action in the supreme court in Kings county, wherein Mary A. Wood, as administratrix of the goods, chattels, and credits of Martin Wood, deceased, was plaintiff, and Alfred L. Simonson and Edward T. Schenck, as executors and trustees under the last will and testament of Samuel Wood, deceased, were defendants. The amended complaint in the action alleged four separate causes of action, and its prayer for relief demanded judgment in the aggregate sum of $11,000, with interest and costs. For the second cause of action it was alleged, in substance, that upon the death of Samuel Wood, his estate, both real and personal, came into the hands of the defendants in the action, and remained under the control of them and their survivors, at the commencement of this action; that the estate was sufficient to pay in full all debts and bequests ·mentioned in the will, and to provide the several sums of money which the testator directed his executors to set apart and invest for the purpose of raising certain annuities provided for in the will; that the executors failed to separate and set apart a sum from ·the rest of the estate, and, for the purpose of raising a larger sum than by legal interest, kept the same invested in rent-paying real property, which yielded an income of at least 10 per cent. upon the valuation thereof; that by the terms of the will there was payable to Martin Wood income upon the sum of $5,000 each and every year from the death of the testator to the death of said Martin; that no part of

said income or legal interest was paid to Martin Wood, but the same remained accumulated in the hands of the defendants, and due to the plaintiff, in amount to the sum of $2,490. This action, being at issue, was, in December, 1887, placed upon the circuit calendar of Kings county for trial. While the cause was awaiting trial, the parties to the action entered into an agreement of settlement of all claims in litigation between Mary A. Wood and the children of Martin Wood on the one side, and the trustees of the estate of Samuel Wood, being the defendants in the action, upon the other. This agreement was reduced to writing, and was executed by the parties thereto. Respecting the action above referred to, it provided:

"In the action of Mary A. Wood, administratrix, 'against the said trustees, the plaintiff is to reduce her claim to the sum of $5,000, and ask for no larger verdict. The defendants are to permit judgment for plaintiff of said amount under the direction of the court, and, upon said judgment being entered, the said trustees will accept an assignment or satisfaction of the same as the payment of the balance due for said purchase price of the trustees interest in 173 Front street, and the said Mary A. Wood agrees that said judgment is not to be enforced in any other way, but is to be satisfied in the manner prescribed herein."

The respondent conducted the negotiations of settlement for the plaintiff, and was fully conversant with the contents of the agreement and with the quoted clause. On December 21, 1887, the respondent, representing the plaintiff in the action, in company with Mr. Ward, the counsel for the defendants, and the defendants, appeared in the circuit court before Mr. Justice Cullen, and stated to such justice the agreement which had been reached. Thereupon a jury was impaneled in the cause. The respondent introduced in evidence plaintiff's letters of administration, stated that he stipulates in open court to reduce plaintiff's claim to the sum of $5,000. Thereupon the justice directed the jury to find a verdict for the plaintiff for that amount, which the jury immediately did without retiring, and thereupon the parties left the court. The verdict thus rendered was in pursuance of the written agreement. There was no modification excepting any part or portion of the causes of action alleged in the complaint from its operation; no suggestion was made to the court of any reservation of any cause of action contained in the complaint, and no amendment of any character was asked for or made. The legal effect, therefore, was to merge all of the demands of the complaint in the judgment, and plaintiff ceased from that time to have any interest in or control over them, nor could any other person make title thereto through her. No judgment was entered upon this verdict until November 9, 1888, at which time the respondent, in making up the judgment roll, indorsed upon the complaint opposite the commencement of the second and fourth causes of action these words: "Complaint amended on this trial by withdrawing this cause of action from consideration," and he procured the clerk to enter judgment therein which recited: "The plaintiff upon the said trial having amended her complaint by withdrawing from issue and consideration the second and fourth causes of action therein contained, and a verdict having been duly rendered in favor of the plaintiff by a jury on the issues re-

maining for the sum of five thousand dollars." The respondent also indorsed upon the back of the judgment roll these words: "This judgment having been satisfied by the plaintiff, you will please not docket the same." No notice of the entry of this judgment was given to the defendants or their attorney, and no copy of the judgment was ever served, and defendants had no notice of it, or of the amendments to the complaint, until some considerable time subsequent thereto. At the date of the agreement for settlement, and at the time when the aforementioned verdict was taken, there was pending an action brought by Simonson and Schenck, as executors and trustees of the will of Samuel Wood, against Mary Wood, for the foreclosure of a mortgage held by said estate. In that action an answer was interposed by Mary Wood, and among other defenses she set up the said second cause of action contained in the complaint in the action by her as administratrix against the trustees, hereinbefore set out, alleging in said answer that she had prior thereto assigned said claim as administratrix to one Stevens, who shortly thereafter assigned the same to her as an individual, and that plaintiffs in the last action were individually indebted to her thereon. This answer was served November 18, 1887. After the execution of the agreement of settlement, and before its provisions had been entirely carried out, the plaintiffs in the last action served a reply therein, but made no allegations respecting the agreement of settlement. This action was the same one for which the said agreement provided, and was subsequently discontinued by plaintiffs in pursuance thereof. On the 2d day of May, 1889, there was served upon the respondent a summons and complaint in an action brought by Lewis L. Fosdick and Van Wyck Hewlett, as executors of the last will and testament of Abraham Hewlett, deceased, against respondent and his wife. This action was brought to foreclose a purchase-money mortgage executed by the respondent and his wife on the 7th day of November, 1885, to Schenck and Simonson, as executors and trustees of the estate of Wood, and secured the payment of $2,000. The mortgage was assigned to Abraham Hewlett about the 31st day of January, 1887, and, he having died, the action was brought by his executors. The respondent joined issue in this action, appearing as attorney in his own behalf, by the service of an answer about June 1, 1889. This answer contained no reference to the second cause of action alleged in the complaint in the action of Wood v. Simonson, in which the verdict was taken by consent. By an amended answer, served December 16, 1890, the identical second cause of action above referred to was set up as a defense, and it was therein alleged that respondent had become the owner and holder of the said claim and cause of action by assignment from Mary A. Wood prior to the assignment of the mortgage to Hewlett, and that the same constituted an offset in his hands against the mortgage. The issue thus joined came on for trial before Mr. Justice Bartlett at a special term held in the city of Brooklyn on the 5th day of February, 1891, at which time respondent appeared in person and as attorney for the defendants. Upon the trial he produced an assign-

ment of said claim from Mary A. Wood to himself. The assignment was without date, but respondent stated to the court, at the time of its introduction, that it was made in November, 1887. The trial was followed by the preparation of requests to find facts and conclusions of law by the respondent, and the court found, upon his request:

"(15) That subsequent to the said 6th day of March, 1886, the said accrued annuities and claim against the estate of Samuel Wood in the hands of said executors and trustees, was duly assigned and transferred by mesne conveyances to said defendant, who, prior to the alleged assignment of said bond and mortgage to said Abraham Hewlett, was the owner and holder of said claims amounting to $2,477.22 against the said executors and trustees of Samuel Wood and the estate of the testator in their hands, no part of which has ever been paid."

And as conclusions of law:

"(2) That prior to any assignment of said bond and mortgage to plaintiff's testator, the same was offset to the full amount thereof by claims due from the mortgagee to the mortgagor. (3) That the defendants are entitled to judgment offsetting against said bond and mortgage an equal amount of the claims due him from said estate and said executors and trustees of the estate of Samuel Wood, and to a judgment adjudging the said bond is satisfied in full. (4) That said bond be delivered up to the defendants, and that record of said mortgage in the clerk's office be marked satisfied, and that judgment be entered accordingly."

Thereafter, and on April 24, 1891, the respondent entered a judgment in the last action, which, among other things, provided:

"(1) That prior to and upon January 1, 1887, there was due to the defendant (respondent), from the executors of the will of Samuel Wood, and payable out of the assets of the estate of Samuel Wood, deceased, * * * the further sum of $2,477.22, the whole of certain annuities accumulated in the hands of said executors in favor of one Martin Wood, and assigned to respondent; in all, the sum of $7,614.22."

By subsequent provision the judgment required the surrender to defendants of the said mortgage and the cancellation of the same of record. Of this trial, resulting in these findings and judgment. the said trustees had no notice, nor were they aware that respondent had alleged by way of counterclaim to the mortgage the said cause of action disposed of by virtue of the agreement, nor were they aware that the amendments had been made to the complaint, and of the judgment entered in the action of Wood as administratrix against them, until some time subsequent to the date when these transactions took place. After hearing of these facts, they caused a motion to be made in the latter action to vacate the judgment entered therein, and strike out the amendments noted on the margin of the complaint, and for other relief. The motion came on before Mr. Justice Cullen, who had presided at the trial, and resulted in an order striking out the recital of the judgment heretofore quoted, and also eliminating the memorandum of the amendments to the complaint, with costs and disbursements of the motion. In other respects the judgment was permitted to stand. A motion was also made before the same justice to vacate and set aside the findings and judgment in the action of Fosdick and others, as executors, against respondent. This motion the said justice sent to Justice Bartlett for hearing, and the latter made an order striking from the judgment roll in that action the findings of fact

numbered 14 and 15, which related to the cause of action heard before Judge Cullen, and by striking from the judgment the words: "And the further sum of $2,477.22, the whole of certain annuities accumulated in the hands of said executors in favor of one Martin Wood, and assigned to respondent; in all, the sum of $7,614.22." In other respects the judgment was permitted to stand.

In many respects there has been a fierce contest upon these facts before the referee, and, as respects the agreement which resulted in the verdict rendered by the jury in Wood, as administratrix, against the trustees, respondent denies under oath that the judgment was to be had upon all the causes of action contained in the complaint, but that he stated in open court that the second and fourth causes of action were withdrawn from consideration, and that he made a pencil memorandum upon the complaint to that effect at the time. We are compelled to say that his statements in this regard cannot be credited. They are opposed to the conceded clause which the agreement of settlement contained; to the testimony of three witnesses, one at least—Mr. Ward—a disinterested witness, and of unimpeachable character; to the record of the proceedings appearing in the minutes of the stenographer of the trial; to the decision of the learned justice who presided at the trial, and who set the same aside upon his attention being called thereto; and to the legal effect which followed from the recorded acts upon which the judgment was based. We may, in the conclusion which we have reached, disregard entirely the testimony of Schenck and Simonson, without at all affecting the substantial character upon which it is based. We apply the rule that the evidence must be of that substantial character which finds the defendant guilty of the offense charged beyond a reasonable doubt, and have no hesitancy in accepting the findings of the learned referee upon this charge in the report which he has made, and have no difficulty in finding for it an abundant support in the evidence. It must be regarded, therefore, as established that the respondent willfully made the amendments to the complaint withdrawing the causes of action from consideration, and entered in the judgment therein the false recital that the causes of action had been withdrawn from consideration. These acts were in violation of the agreement, were a fraud upon the court, corrupted its records, and were clearly acts of deceit and malpractice.

There was much testimony given and conflicting statements made before the referee concerning the time when the agreement of settlement was in fact finally executed. But, if we accept the respondent's version in that regard, it does not relieve him from his culpable act. Whether this agreement was in fact signed by the parties before or after the verdict is not the essential thing. The essence of the matter is in what it contained. It is not disputed at any place in this voluminous record that the clause respecting the particular action which finally found place in the executed agreement was any other or different from that agreed upon in the tentative stages of the negotiation. And therefore, whether the ver-

dict was taken before the execution of the agreement or after, whether it was subject to the right of the defendants to thereafter appear and open the judgment or was absolute, is all aside of the question which is now presented.   If we assume it was as respondent claims, it still remains as the fact that the agreement when made did contain the clause, that the verdict which was taken was by virtue of it, and that its provisions in this respect were thereafter carried out by the defendants.   Consequently, respondent had no right or authority to do the acts which he did do, whether the agreement was in fact executed before or after the verdict was taken.   There appears before us at this time an acknowledgment to the agreement, which purports to have been taken before the respondent on the 30th day of December, 1887, and is under his hand and seal.   There is nothing in the minutes of the testimony showing that this acknowledgment was upon the paper when it was submitted to the referee, although it was then submitted to careful inspection, not only once, but many times.   Its appearance is clean, and the ink evidently fresh.   If it was of vital importance, it would be discredited, as not having been produced before the referee. Its effect is not to change in the slightest degree the facts upon which the conclusion was reached by the referee, and cannot change our own.   Respondent asserts that the trustees knew that the cause of action claimed to have been withdrawn was so in fact, for the reason that they subsequently filed a reply in their action against Mary Wood in the foreclosure suit.   There is nothing in the reply which indicates any knowledge, nor does the absence of allegation establish that the trustees in fact knew it, nor do we think that such inference is permissible when taken in connection with the other acts, much less that they assented to it. There was delay in procuring and delivering the release of Carrie M. Wood for which the agreement provided, and for the evident purpose of certainty and protection the reply was served.   But, as the agreement was then in process of execution, it would be a remarkable inference, in view of all the other facts, to say that, because the fact of the verdict was not alleged in the reply, therefore the trustees knew and assented to the subsequent acts of the respondent in what he did.   This action was almost immediately settled and discontinued, as provided in the agreement; and the trustees, in view of what had transpired thus far might well rely upon the appearance that the whole agreement was in process of execution.   Stress is laid upon the fact that Schenck insisted that the words "to which bond and mortgage she claims no offset or defense" should be stated in the agreement, in consequence of which he knew that this cause of action was alive, and still had vitality.

It was provided by the agreement of settlement that Mary Wood should, on demand, execute and deliver a release of all demands which she had, both as administratrix and personally.   In the action brought by the trustees to foreclose the mortgage she had set up by way of defense the same cause of action as was secondly alleged in the complaint in which the verdict was taken.   It was undoubtedly wise to have the clause in the agreement, in view of

the fact that she in one action claimed to recover as administratrix, and in another to hold the same claim individually. The words did not imply that there was any validity in the claim which she had alleged as a defense, and as to those claims she had already agreed to execute releases, and as to the claim as administratrix she had merged that in her verdict. The words, therefore, did not imply a recognition of any particular claim which she held, but was to protect the bond and mortgage against any claim. If, however, we could imply that it was aimed directly at this claim, it in no wise affected what transpired upon the trial when the verdict was taken. Nor does what respondent says was done place him in any better attitude. These words implied that, if Mrs. Wood held any existing defense to the bond and mortgage, it should be wiped out. It did not mean that she should divest herself of any claim which she had for the purpose of keeping it alive, in order that she might secure its benefits in another action, or subsequently acquire the same to hold as an existing offset to the mortgage. Good faith required a release to the trustees of all claims which she held, not that they should be kept alive by transfer, and subsequently reasserted, either in her own or others' hands. No one could understand this condition with any more clearness than did respondent. Yet in the face of this knowledge he procured an assignment of this claim to himself, after which she executed the agreement as he claims. This was a fraud upon the trustees, and was in violation of the agreement. No title to the claim passed by virtue of that transaction, and it became void in the hands of the respondent, as against the trustees. This claim furnishes no answer to the other facts proved in the case, nor does it aid to establish that the trustees knew or consented that the causes of action should be withdrawn when the verdict was rendered.

We now come to a consideration of the subsequent acts by which respondent enforced this claim as an offset. They are without practical dispute. We think the connection between the two actions and defendant's attitude thereto, followed by what he did, prompted him to make the entries and enter the judgment for the purpose of removing any legal obstacle which might be asserted in his contemplated use of this claim, of which he had possessed himself, as an offset to his mortgage. When he asserted this claim in his answer, he was by no means assured, nor could he be, that his defense of the quarter interest due to annuitants to which he was entitled would be allowed in full. That offset was subject to all the vicissitudes which attend upon a litigated action where claims are disputed. This claim added to his strength for a successful defense. He therefore alleged it. When he came to the trial, he presented it, proved it, had it allowed, and entered it in his judgment. Respondent then knew two things: First, that this claim had been merged in a verdict which he had obtained, and no longer existed as a subsisting claim; second, he knew that, if not so merged, it was void in his hands, as he had no right to take an assignment of it, at the time when he says he did, from Mary A. Wood. Her agreement, of which he had knowledge, required

its cancellation. It could not have vitality thereafter in his hands. Respondent's use, therefore, of the claim, in the manner which he did, and under the circumstances, coupled with his knowledge, constituted a fraud and imposition upon the court, and made him guilty of deceit and malpractice in his office as an attorney and counselor of this court. It is said in his defense that all this was harmless, for the reason that, although he proved the claim, it was not claimed by the respondent as an offset to the amount due on the bond and mortgage. It is true that a clause of the judgment entered in the action provides that the annuities to which respondent was entitled were an offset to the full amount of the bond and mortgage, and that on account thereof the bond and mortgage was paid and satisfied. But we fail to perceive how respondent is relieved from the effects of his acts by this circumstance. He alleged the claim in his answer, proved it upon the trial, procured a decision of the court establishing it, and entered it in his judgment as an established demand and an offset against plaintiff. Allowing full force to this excuse, it amounts to no more than saying that he established more of a defense than was necessary to defeat the bond and mortgage. The vice of the transaction was in establishing what respondent knew was an invalid claim as a defense to a cause of action, and procuring a determination by the court that it was a valid and subsisting claim against the cause of action sought to be enforced. The claim made, that it was needless for him to do it, cannot now avail to remove the sting of the transaction found in what he did. Nor is respondent aided by admitting that the recital in the judgment that he held the claim prior to January 1, 1887, was a mistake. The imposition upon the court was as complete whether title was obtained in November or January. In fact the mortgage was assigned to Hewlett about January 1, 1887. In order that the claim might be used as a defense to the action, it became essential to show respondent the owner before the assignment; consequently we find it alleged in the answer that his ownership was prior to the assignment of the mortgage, and the recital in the judgment simply evidenced what was alleged in the answer, although the date was different from that proved upon the trial. The prompt decision of Justices Cullen and Bartlett in wiping out the fraud and imposition when it was called to their attention has the practical force of judicial action in condemnation of the act. Respondent may not now be heard to urge in extenuation that such justices did not at the time proceed to inflict summary punishment by proceedings in contempt or otherwise. The law does not approve or justify hasty action in such matters, for fear that injustice may unwittingly be committed. It awaits the full and thorough examination, the careful and mature deliberation, of its courts, before announcing its conclusions or inflicting its punishments.

It is urged that respondent consented to the orders which were made correcting the judgments. But such consent was only given after motions had been made which respondent vigorously resisted, and when the hand of the court rested heavily upon him. Respond-

ent did no voluntary act by which he sought to rectify the wrong he had done. Whatever was obtained was extorted from him under legal compulsion. We are not now concerned with the shortcomings of the trustees of the Wood estate, assuming that they exist. Nor does it relieve the defendant from responsibility for his acts, assuming that they have been guilty of misconduct. He may not shield himself from wrongdoing because they also are guilty. He is now here to answer for his offenses, not theirs.

We are forced to the conclusion that the first charge contained in this proceeding is established by satisfactory proof, and that respondent is properly found guilty of deceit and malpractice in his office as an attorney and counselor of the courts of this state, substantially as alleged in the charge.

The second allegation of the petition charges respondent, in substance, with having caused to be prepared a fictitious case or submission of an alleged difference between Jennie E. Wood, as administratrix with the will annexed of Samuel Wood, against Robert M. Nesbitt. The submission purported to be in compliance with section 1279 of the Code of Civil Procedure. It is further charged that such case was submitted, and that a decision was rendered therein by the general term of the supreme court in the First department, and that subsequent thereto a motion was made by Charles Hewlett, the petitioner, representing the next of kin of Abraham Hewlett, deceased, and others, to have the decision of the court rendered therein vacated, and the opinion recalled, and expunged from the records of the court, and for other relief. It was admitted that a case was made and submitted to the court for decision, and that the court wrote an opinion therein, and rendered a decision thereon. Wood v. Nesbitt, 62 Hun, 445, 16 N. Y. Supp. 918. And that subsequently, upon the motion above referred to, the court vacated the former decision, upon the ground that the controversy was not of that independent character which the Code contemplated, and that in fact respondent was the counsel for both parties. Id. (Sup.) 19 N. Y. Supp. 423. We do not deem it necessary to enter into an extended discussion of the evidence bearing upon this charge. The referee has found that Jennie E. Wood entered into a written contract with Nesbitt for the sale of certain property; that this contract formed the basis upon which the agreed case was made; that respondent furnished substantially all of the facts from which was made the agreed case, and that he made the brief for Nesbitt, and revised and amended the brief for Wood. The evidence is abundant to show that respondent was the prime mover in all of the proceedings which led to the making of the case. And there is much in the evidence and circumstances surrounding the whole transaction tending to establish that he procured to be executed the agreement between Wood and Nesbitt for the purpose of having submitted to the court for determination a case so made up as to produce the decision which he desired for other purposes than the determination of a real controversy between the parties. The referee has not passed upon the latter question, but has set out the record facts in connection therewith. We

do not deem it necessary to say that the respondent did in fact set in motion all of the machinery which led up to the proposed case for his own purposes. But it does appear from the evidence in the case, by the finding of the referee, and by the decision of the court, that the case submitted was an imposition upon the court, in that it was not of the independent character contemplated by the Code. This is the most charitable view of which the case will permit. In this connection it will be proper to examine the third charge, as it has reciprocal relations to the second. This charge, in part, is that respondent made up the submitted case falsely, in that he stated therein that: "The will in question appointed three executors. The codicil changed the executors by removing two of those originally named, and appointed two additional executors. Three of the persons named as executors died. All the others have been removed, and their letters testamentary revoked." That by such statement he concealed from the court what was well known to him,—"that the appointment of the trustees under the will had not been revoked by any order of the court, excepting that said Alfred L. Simonson had been removed, and Martin Wood had died, leaving Edward T. Schenck, who was then living, as sole surviving trustee." The referee found with respect to this charge that the case as made up was an imperfect and partial presentation of all the facts which ought to have been submitted to the court, but that on consideration of the fact that a copy of the will accompanied the case, and that the will was well known to the courts, and that the decision would not bind any one but the parties to the record, he did not feel warranted in finding that the respondent intended to conceal material facts from the court in making said case, or that he was guilty of fraud or deception in relation thereto. The petitioner's counsel argues with ability and force that this was not a correct view of the case, and was not warranted by the evidence, and much of his argument tends strongly to a conviction that he is correct. Respondent relies upon the finding of the referee as an exoneration from the charge. Allowing for that certainty of evidence and inference which the law commands in the review of cases of this character, we feel constrained to adopt the conclusion of the referee upon this question.

Upon the two charges, therefore, we have this result: That respondent caused to be submitted a case for decision which he knew was not in compliance with law; that the case was an imperfect and partial presentation of all the facts which ought to have been submitted to the court. This is as favorable a view for respondent as the finding and evidence warranted. Such acts constitute professional misconduct, as it foists upon the court a fictitious controversy, and is to that extent a fraud and imposition upon it. Courts are constituted to decide actual questions existing between parties who are real, and who have a real controversy. And the law has carefully hedged about the submission of controversies between parties with such formalities and solemn requirements as will prevent anxious persons from resorting improperly to its aid, and at the same time furnish real litigants an easy mode of invoking its au-

thority. Code Civ. Proc. §§ 1279, 1280. A proper regard for the dignity of the court, a just recognition of its relation to the public, and a proper conception of the office of a lawyer, require a due observance of these formalities, in order that the court may properly discharge its obligations and fulfill its public function; otherwise the source of its authority is corrupted, and the administration of justice brought into contumely and disrepute. The submission of anything but a real controversy has been denominated judicially as a fraud. Judson v. Flushing Jockey Club, 14 Misc. Rep. 350, 36 N. Y. Supp. 126. In Lord v. Veazie, 8 How. 255, it was said by Chief Justice Taney:

"Any attempt by a mere colorable dispute to obtain the opinion of the court upon a question of law which a party desires to know for his own interest or his own purposes, when there is no real and substantial controversy between those who appear as adverse parties to the suit, is an abuse which courts of justice have always reprehended, and treated as a punishable contempt of court."

When it is apparent, as the referee found, that the case did not truly state the exact facts, the matter is aggravated, and we should be shutting our eyes and stultifying our intelligence, if, after reading the record in this case, we did not conclude that the respondent had a thorough and intimate knowledge with every phase of this Wood estate and of the decisions construing the will. In some of the reported cases in connection with the litigation arising out of the trusts created by the will he has acted as attorney for one of the parties. He had appeared as counsel for the attorney general in an action which sought, among other things, to remove from office the testamentary trustees named in the will. People v. Simonson, 126 N. Y. 299, 27 N. E. 380. He represented many of those who claimed as annuitants. He had many copies of the will printed, and distributed the same. He appeared in actions, and resisted the foreclosure of mortgages brought by the trustees or their assigns. He instituted and conducted the proceedings for the removal of the executors. He took title to property conveyed to him of the Wood estate by the trustees under the will, and he proposed to the trustees to buy them for a syndicate for which he was to pass title to upwards of $200,000 of real property belonging to the estate. He has touched the will at nearly every point where it was possible for a question to arise. The ability and skill of which the respondent is possessed is plainly evident in the submitted record, and we may not, therefore, withhold a fair estimate of what he must have known of the facts in connection with this estate, and of the will by which it was transmitted, when we consider what he has concededly done, and what his opportunities for information have been. We conclude, therefore, that as to these charges the respondent was guilty of professional misconduct, and that his act in submitting or causing to be submitted the case to the general term was a fraud and imposition upon the court, and that such fraud was aggravated by his imperfect and partial statement of the facts.

We come now to consider the fourth and last charge, which consists in the fact that respondent prepared a petition, verified by

Jennie E. Wood before him as a notary on the 2d day of August, 1893, which he thereafter presented to the surrogate of the city and county of New York, and procured thereby the appointment of said Jennie Wood as testamentary trustee of the estate of Samuel Wood, deceased. The petition alleged, inter alia:

"That by the codicil of the will of Samuel Wood, deceased, the appointment of Martin Wood, Alfred L. Simonson, and Edward T. Schenck as executors and trustees was revoked and modified, and Abraham Hewlitt, Martin Wood, Alfred L. Simonson, and William Elmer were appointed the executors, thereby superseding said Edward T. Schenck. That the said Martin Wood, Abraham Hewlitt, and William Elmer have long since deceased, and that no one has been appointed in their place. That on July 30, 1890, Alfred L. Simonson, then the sole surviving executor and trustee, was removed from his office as such executor and trustee by this court, and his letters testamentary revoked. That the lawful construction of said will on said subject is that given in an opinion of the general term of the supreme court [Simonson v. Elmer], reported in 21 Abb. N. C. page 225."

The referee also reports that said petition "sets forth the fact that Edward T. Schenck, whose appointment as executor and trustee it alleges was revoked by a codicil to said will, claimed to hold divers papers and property of the estate, upon the pretense that he was the sole surviving trustee of said estate, and that the petitioner had no rights as testamentary trustee; and, while claiming that all the valid trust duties under said will belonged to her, it asked that, in order to avoid controversy and embarrassment, she might be appointed testamentary trustee eo nomine." It is claimed and alleged, and proof was received to sustain the claim, that these statements were false and misleading. It became necessary for respondent, in order to procure the appointment of Jennie Wood as a testamentary trustee, to show that the testamentary trustee under the will was dead, a lunatic, had been removed, or resigned, and that the trust had not been fully executed; or, unless the court should be of opinion that the appointment of a successor would be for the benefit of the cestui que trust in a case where one of two or more trustees had died, become a lunatic, been removed, or resigned. Code. Civ. Proc. § 2818. In order, therefore, to accomplish this result, the allegations of the petition were made. The facts appearing before the referee show that in November, 1879, Justice Van Brunt had held at special term, in the case of Simonson v. Wood (opinion not reported), that the codicil attached to the will of Samuel Wood did not have the effect of changing the trustees named in the will, in consequence of which Edward T. Schenck was and continued to be a trustee under the will. He, in fact, performed the duties of such until he was permitted to resign on the 17th day of June, 1893, when the supreme court appointed in his place and stead as sole surviving trustee the New York Guarantee & Indemnity Company. It also appeared that in the action of Simonson v. Elmer, supra, after the decision of the general term, the parties made a settlement which resulted in a dismissal of the appeal therein, and that, while that case did hold that the codicil made change in the executors and trustees of the will by substituting Elmer in the place of Schenck, whereby the latter ceased to have any relation to the will, yet that in fact

such decision did not have force and effect by reason of subsequent action in dismissing the appeal and of existing decision which discredited it. All of which it is claimed was well known to the respondent. The evidence established that about two weeks prior to the presentation of this petition to the surrogate, an action had been tried and decision rendered by Mr. Justice Bartlett wherein the Brooklyn Trust Company was plaintiff and Mary A. Wood was defendant. Rival claims of Schenck as trustee, and of Jennie Wood as administratrix, came up therein for adjudication. The latter had not then applied to be appointed testamentary trustee eo nomine, but had been appointed administratrix with the will annexed of the estate of Samuel Wood. The respondent appeared as attorney for defendant and cited the case of Simonson v. Elmer, 21 Abb. N. C. 225, in support of his contention therein. Justice Bartlett, in deciding the case, wrote a memorandum opinion, refusing to follow this decision, but cited the opinion of Mr. Justice Van Brunt; saying: "I concur in the views expressed by Mr. Justice Van Brunt in reference to the will of Samuel Wood in the case of Simonson v. Wood, in his opinion filed in the New York special term in November, 1879." This decision and opinion was not referred to by the respondent when he presented the petition to the surrogate for the appointment of Jennie E. Wood as trustee eo nomine. It certainly was his duty to have informed the surrogate, upon this ex parte application, of what must have been well known to him. He then knew that the Elmer Case had been discredited, and, as we have before had occasion to set out, he knew that Schenck was assuming to act as trustee, and that he had the support and authority therefor. The decision of Judge Bartlett, so recently made, must have been clear and fresh in his mind. He sought to avoid the force of this by testifying that he did not know of the decision by Justice Van Brunt, and cited a conversation had with Mr. Bergen. But the latter not only failed to corroborate him, but contradicted and discredited the statement.

There is much in the testimony which tends to lead the mind to the conviction, in view of respondent's intimate knowledge of the Wood estate, and the litigation which has been had, that he failed to call the surrogate's attention to the later decision, for the reason that so doing might result in the rejection of the application. By withholding information of this character, the surrogate was easily induced to adopt the Elmer Case, and his former determination based thereon as the law.

The claim that respondent sought the appointment of Jennie Wood under the authority of the Code that it was beneficial to the cestui que trust cannot be sustained for the reason that no such claim was made in the petition, nor was the surrogate's order based upon any such consideration. No one, we think, can read this record with unpartisan bias, and not receive a strong impression approaching dangerously near to a conviction that there existed a design, in the matters which furnish the basis for the last three charges, upon the part of respondent, to procure the decision upon the submitted case, and the appointment of Jennie E. Wood as a

testamentary trustee for improper purposes. It is not now necessary to set out how disaster could be worked, and settled titles disturbed, by such means. But we are mindful that the Elmer Case, as reported, apparently carried with it all the force of a judicial opinion given by an able court, and that the surrogate had the authority to adopt it as his view of the law. We may not, therefore, in justice, disregard this fact in construing the act and motive which actuated the respondent in making use of it.

We have set out in the foregoing discussion the evidence and inference which the record contains respecting the fourth charge. Weighing it all under the rule which we have heretofore announced, there still remains the doubt, created by the Elmer Case, that respondent understood that the law existed as it is therein reported. This doubt has a basis for its foundation, and is, therefore, a reasonable one of which the respondent is entitled to the benefit. Adopting, therefore, this construction of the evidence, we must hold that the respondent stands exonerated of the matters and things charged therein. As to the other charges, we are convinced that the report of the referee is abundantly supported by evidence, and that in the main, as is herein set forth, the charges have been sustained by proof. It remains to be seen what punishment shall be meted out as adequate for the offenses established. Section 67, Code Civ. Proc., provides that an attorney and counselor of the courts of record of this state may be suspended or removed from office who is guilty of any deceit, malpractice, crime, or misdemeanor. In arriving at the punishment which should be imposed, each case must be largely governed by its particular facts, and rests in the sound discretion of the court (In re Eldridge, 82 N. Y. 161); the usual consideration being, where the charge is established, is the character of the offense such as to render the respondent unfit to longer remain upon the roll of attorneys and counselors of the courts of the state, or may it be so excused that a discipline less severe than permanent disbarment will adequately meet the justice of the case? After a careful consideration of the evidence, the character of the offenses of which the respondent is guilty, and the punishment which attaches, even. though no penalty be added to his conviction, lead us to the conclusion that justice will be fairly attained by suspending respondent from practice as an attorney and counselor at law in the courts of this state for the period of two years. All concur.