(169 App. Div. 614)

## In re HAWES.

(Supreme Court, Appellate Division, First Department. November 5, 1915.)

1. ATTORNEY AND CLIENT ⬤=53—DISBARMENT—GROUNDS.

In disbarment proceedings against an attorney, evidence *held* to show that respondent was guilty of making a false affidavit as to the service of a citation for the removal of executors, and that suspension from practice was therefore warranted.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 74, 75; Dec. Dig. ⬤=53.]

2. ATTORNEY AND CLIENT ⬤=42—DISBARMENT—GROUNDS.

That an attorney had made an affidavit in an action for registration of title, wherein he had grossly misstated the value of the property in question for the purpose of obtaining an extra allowance, required suspension from practice.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 54; Dec. Dig. ⬤=42.]

3. ATTORNEY AND CLIENT ⬤=42—DISBARMENT—GROUNDS.

In disbarment proceedings against an attorney, evidence that he had sought to have the appellate court pass upon a fictitious controversy, in which he virtually appeared for both sides for the purpose of obtaining an adjudication as to the validity of the Torrens Act (Laws 1908, c. 444), requires suspension from practice.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 54; Dec. Dig. ⬤=42.]

Application for disbarment of Gilbert Ray Hawes, an attorney. On the report of the official referee upon charges of professional misconduct. Respondent suspended for one year.

Argued before INGRAHAM, P. J., and LAUGHLIN, SCOTT, and DOWLING, JJ.

Einar Chrystie, of New York City (Paul Fuller, Jr., of New York City, of counsel), for petitioner.

Eliot Norton, of New York City, for respondent.

PER CURIAM. The respondent has been charged by the Association of the Bar of the City of New York with a number of acts of professional misconduct, as to a majority of which charges the official referee has reported that in his opinion they have been sustained. A careful examination of the evidence and exhibits has convinced us that no other conclusion could have been arrived at.

[1] The first two charges may be conveniently considered together.

⬤=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

They relate to a false affidavit made by the respondent as to the service of a citation issued out of the Surrogate's Court, and false testimony given before that court in an attempt to justify the affidavit.

The proceeding in which the citation was issued was one instituted by the respondent for the removal of the executors and executrix of Dr. Clark W. Dunlop, deceased, on the grounds of alleged misfeasance and malfeasance in the performance of their executorial duties. Respondent represented his wife and her sister, who were relatives of the decedent and interested in his residuary estate. The executrix of the will was Mrs. Eliza C. Dunlop, the widow of decedent, and it was with reference to the service of the citation upon her that the false affidavit was made. This affidavit was verified on August 18, 1910, and recited that on the 17th day of August, 1910, he had made personal service of the citation upon Eliza C. Dunlop, at her residence in the city of New York, by leaving a copy thereof with a person of suitable age and discretion, pursuant to section 2520 of the Code of Civil Procedure, and that said person promised to deliver said citation to said Eliza C. Dunlop. At that time Mrs. Dunlop lived at No. 112 West Eighty-Sixth street in the city of New York; but her house was closed for the summer, no one residing therein, and she herself was in Europe.

Being later called upon to justify this obviously erroneous affidavit, respondent swore positively and unequivocally that he had served the citation by delivering the same at No. 114 West Eighty-Sixth street to "Mr. William V. P. Roome, a retired lawyer, who had stated to me previously, and repeated the statement that evening, that he represented Mrs. Dunlop, and was her agent, and had been authorized by her to accept service of all papers." The evidence shows in the clearest way that this statement was false in every particular; that respondent had not delivered the citation to Mr. Roome, and that the latter had never been authorized, or stated that he had been authorized, to receive any papers for Mrs. Dunlop. In some way the papers, including the citation, appear to have been deposited in the basement of Mr. Roome's house, for they were afterwards found there among a quantity of mail matter addressed to Mrs. Dunlop; but how they came there, or to whom they were delivered, if delivered to any one, is not explained. All that is made entirely clear is that the respondent's statements as to the service were undoubtedly false.

These statements were made with such deliberation and so specifically that it is impossible to believe that they were inadvertent, and the only conclusion possible is that for some reason the respondent sought to mislead and impose upon the court. What that reason was it is not easy to imagine, because the citation was duly served upon both of the executors, and the respondent could scarcely have hoped to obtain an order by default by making a false affidavit as to the service upon the executrix. The only solution which suggests itself is that he desired to hasten the proceeding, and was unwilling to await Mrs. Dunlop's return from Europe.

[2] Another charge against the respondent, which is admitted, although sought to be explained, involves also the making of a false affidavit in a judicial proceeding.

Respondent has been engaged to some extent in prosecuting actions for the registration of titles to real estate under the so-called Torrens Act. In March, 1912, he had been engaged in such an action affecting a parcel of real property in Brooklyn. On March 9, 1912, the action being in condition for the entry of judgment, the respondent moved for an extra allowance upon an affidavit in which he swore, as to his own knowledge, that the property was worth $50,000, and he asked for an extra allowance based upon that valuation. As matter of fact, as it is now conceded, the utmost value of the property was not more than $2,-500 or $3,000. The respondent seeks to excuse and explain this gross misstatement by stating that he had been under a great nervous strain, that the affidavit was prepared in haste, that he had never seen the property and had no personal knowledge of the value thereof, and that he was under the strong impression that some one had told him that the value of the property was as he had stated it. While this statement may serve to explain, it certainly does not excuse, the respondent's reckless mendacity, for, as is justly remarked by the official referee:

"It is just as wrong to assert that a particular statement is true, without knowing whether it is true or false, as to assert a fact, when the affiant knows it to be false."

Again we are struck with the apparent futility of the respondent's act. It seems incredible that he could have believed that the attorneys upon whom the affidavit was to be served would fail to observe the gross overvaluation put upon the property, or would permit respondent's allegation of value to go unchallenged.

[3] A third charge has been dismissed by the official referee, which in our opinion should have been sustained as an instance of professional misconduct. Respondent, for purposes of his own, was extremely desirous of obtaining an adjudication upholding the validity of the so-called Torrens Act for the registration of land titles as to which he had specialized his practice. He arranged with another attorney to present to the Appellate Division in the Second Department a submission of an apparent controversy upon an agreed case involving the validity of the act in question. There can be no doubt under the evidence that the alleged controversy was not a real but a sham one, in which the respondent virtually represented both parties, and actually prepared or assisted in the preparation of both briefs. This was a clear case of professional misconduct, since it sought to "foist upon the court a fictitious controversy, and is to that extent a fraud and imposition upon it." Matter of V., an Attorney, 10 App. Div. 491, 508, 42 N. Y. Supp. 268, 278. The case thus made up was not entertained by the court, apparently because respondent had failed to make the submission in the form prescribed by the Code of Civil Procedure; but that fact in no way lessens his guilt, which lay in the intention and attempt to impose upon the court.

We have no choice, therefore, but to find the respondent guilty of unprofessional conduct in the matters above referred to. He has been a member of the bar for upwards of 30 years, and presented to the referee, by consent of counsel and in lieu of character evidence, letters from a number of well-known and highly respected judges, lawyers, and busi-

ness men stating in effect that they had known and had had dealings with respondent and had not found him to be untruthful or dishonest. Such testimonials have probative value when there is any question upon the evidence as to the guilt of a party accused of misconduct, but do not serve to palliate or excuse proven and intentional wrongdoing.

The respondent appears to be utterly reckless as to the truth, and willing to make false statements under oath, even when his mendacity is certain to be discovered. Such a man in any walk of life is dangerous, and is especially so when he occupies the responsible position of an attorney, upon whose good faith and truthfulness the court is entitled, and often obliged, to rely. While it is true that in the particular cases above discussed no harm seems to have come to any one in consequence of the respondent's acts, yet we cannot allow that circumstance to stand in the way of the performance of the duty which we owe to the profession and the community.

Our conclusion is that the respondent be suspended from practice for one year, with leave to apply for reinstatement at the expiration of that period, upon showing compliance with the conditions to be recited in the order to be entered hereon. Settle order on notice.